*In re* RANKIN (RANKIN v GRIEVE)

*In re* DUMAS

Docket Nos. 85752, 86740. Decided November 8, 1989. On application by the limited guardians for leave to appeal, the Supreme Court, in lieu of granting leave, modified the judgment of the Court of Appeals in *Rankin* and reinstated the judgment of the probate court, and remanded both cases to the probate court for further proceedings.

Troy Rankin and Nancy C. Rankin sought termination in the Muskegon County Probate Court of the limited guardianship of James Grieve and Merry Grieve over Misty Marie Rankin, their minor child. The court, Tom H. Linck, J., terminated the limited guardianship and entered an order effecting its intent to minimize the disruption of the child's life. The Muskegon Circuit Court, Ronald H. Pannucci, J., reversed. The Court of Appeals, WAHLS, P.J., and McDONALD, J. (R. I. COOPER, J., dissenting), reversed, concluding that the withdrawal of parental consent to a limited guardianship leaves a probate court with no choice but to terminate the guardianship (Docket No. 107932). The guardians seek leave to appeal.

Jane Dumas sought termination in the Wayne County Probate Court of the limited guardianship of Mattie Siebert over Antwon D. Dumas, following the filing of a petition by Mattie Siebert to adopt the child. Prior to decision by the probate court, the Court of Appeals decided *Rankin.* On the basis of *Rankin,* the probate court, Martin T. Maher, J., terminated the guardianship. Leave to appeal in the Court of Appeals was denied. The guardian seeks leave to appeal.

In a unanimous opinion per curiam, the Supreme Court *held:*

A limited guardianship must be terminated upon petition of the parent or parents at whose request the limited guardianship was created. However, the probate court has the authority to enter appropriate orders to assist the child in the transition from the home of the limited guardian to the home of the parents.

*Rankin,* modified.

*Dumas,* remanded.

175 Mich App 465; 438 NW2d 324 (1989) modified.

*Bruce Krueger* for the petitioners in *Rankin.*

*Evans & Luptak* (by *Christopher A. Andreoff* and *Teryl Minasian Asher*) for the petitioner and the limited guardian in *Dumas.*

*Persinger & Farmer, P.C.* (by *Floyd H. Farmer, Jr.*), for the respondents in *Rankin.*

*Balgooyen Law Offices, P.C.* (by *Gerald W. Gibbs*), as Guardian Ad Litem in *Rankin.*

PER CURIAM. Before us today are a pair of cases in which the probate court appointed a limited guardian for an unmarried minor. When the parents of the minors petitioned to terminate the limited guardianships, a controversy arose concerning whether the probate court had any choice other than an immediate and unconditional termination of the limited guardianship.

We hold today that a limited guardianship must be terminated upon petition of the parent or parents at whose request the limited guardianship was created. However, the probate court has the authority to enter appropriate orders to assist the child in the transition from the home of the limited guardian to the home of the parents.

I

Article 4 of the Revised Probate Code[1] contains a number of sections concerning guardianships. These sections provide closely drawn limitations upon the circumstances under which a guardian

---

[1] MCL 700.401 *et seq.*; MSA 27.5401 *et seq.*

may be appointed, and upon the duties and responsibilities of a guardian.

In early 1980, a bill[2] was introduced in the Michigan House of Representatives for the purpose of refining a number of these provisions. While this bill was pending, the Attorney General issued an opinion[3] in which he provided a negative answer to the question, "May a probate court appoint a guardian for an unmarried minor based solely on the consent of the parents of such minor to such appointment?"

In response to this opinion, the sponsor of the bill offered amendatory language[4] that was soon enacted as MCL 700.424a; MSA 27.5424(1) by 1980 PA 396:

> (1) The court may appoint a limited guardian for an unmarried minor under this section upon the petition of the parent or parents if both of the following occur:
>
> (a) The parents with custody of the minor consent or, in the case of only 1 parent having custody of the minor, the sole parent consents to the appointment of a limited guardian.
>
> (b) The parent or parents voluntarily consent to the suspension of their parental rights.
>
> (2) The suspension of parental rights under this section does not prevent the parent or parents from filing a petition to terminate the guardianship at any time. Appointment of a limited guardian under this section shall be a continuing appointment and may be terminated by the court upon petition of the parents or sole parent having custody.
>
> (3) A limited guardian appointed under this

---

[2] 1979-1980 HB 5406.

[3] OAG, 1979-1980, No 5782, p 1002 (September 17, 1980).

[4] The relationship between the opinion and the amendment is stated in the House Legislative Analysis, HB 5406, as enrolled, January 22, 1981.

> section shall have all of the powers and duties enumerated in [MCL 700.431; MSA 27.5431], except that a limited guardian may not consent to the adoption of the minor or release of the minor for adoption nor may a limited guardian consent to the marriage of a minor ward.

The cases before us today concern limited guardianships that have been ordered under this statutory provision.

II

One of the cases before us is *In re Rankin.* It involves a girl born in May 1985. Soon after her birth, her parents consented to place her in the custody of a couple who later became her limited guardians. This couple is unrelated to the girl's parents, and learned of the baby's need for a home through a third person.

By all accounts, the guardians are a warm and loving couple who, in addition to raising their own children, have opened their home to other foster children.

After the baby was placed with the couple, the parents filed a July 1985 petition seeking to have them named as limited guardians. In August 1985, the petition was granted.

In June 1987, the parents petitioned for termination of the limited guardianship.

The probate court then conducted a hearing, at which it took testimony of the parents, one of the guardians, and various other persons familiar with the situation. These persons included both expert and lay witnesses.

About a month after the hearing, the probate court issued its opinion, stating that it had no authority to do other than grant the parents' petition to terminate the limited guardianship:

In this case the petition to dismiss the guardianship is based on the withdrawal of consent to the continued guardianship by the parents. The Court does not have jurisdiction to determine, nor does the petition request the Court to determine, whether the home of the parents is inadequate due to neglect. The sole issue before the Court is whether a parent has authority to withdraw their [sic] consent for the guardianship.

In this case the guardianship has been in existence for a period of over two years, and although some disruption in the life of the child may occur, the Court has no authority to deny parental rights to their child.

It should be further noted that the matter is not a question to be decided under the Child Custody Act,[5] nor does the Court have any jurisdiction to make a determination under the Neglect Section of the Juvenile Code.[6] The Court is limited to the issue of whether or not parental consent to the guardianship previously established is now being withdrawn. The Court is satisfied that it is.

Because of the length of time that this guardianship has been in existence, the Court is not unmindful that the return of the minor child in this case to the parents will be disruptive to all of the parties. Although the Court is not optimistic that some disruption will occur, the Court is ordering that all parties participate to minimize the disruption.

The probate court later entered an order effecting its intent "to minimize the disruption."[7]

---

[5] MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.*

[6] Presumably, this is a reference to MCL 712A.2(b); MSA 27.3178(598.2)(b).

[7] Pursuant to the opinion in this matter dated September 24, 1987, it is ordered that guardianship over [the child] is dismissed.

It is FURTHER ORDERED, in order to minimize the disruption in [the child's] life, and by agreement of the parties, through their respective counsel, that a period of re-acquaintance is to take place. This will be arranged by the parties and will be guided by the following schedule:

The guardians appealed in the circuit court. In conformance with an earlier oral opinion, the circuit court issued a March 1988 reversal order that reinstated the guardianship.[8]

---

a. Initial visits by the [parents] at the home of the [guardians] each weekend. The [parents] are to be given time alone with [the child].

b. After several such visits, [the child] will be allowed to leave with [her parents], for one or two hours at first, to expand gradually to a full day.

c. After several such full days [the child] will be allowed to stay overnight, to be returned, at first, the following morning, the time to be expanded gradually until [the child] stays the entire weekend with [her parents], from Friday night until Sunday evening.

d. After several such weekends [the child] will come to live with her parents. The parties contemplated that the [guardians] will continue to have contact with [the child] and will have reasonable visitation as agreed upon by the parties.

e. The parties agree that therapeutic intervention may be desirable. If this is done the parties will agree upon a therapist and share the costs of such counseling as may be required.

f. The parties further agree that in the event this matter is appealed the above provisions and considerations will form the basis of any stay order entered during the pendency of the appeal.

[8] [The guardians] having appealed the decision of the Probate Court terminating their guardianship over [the child]; and the Court having considered the transcript of the Probate proceedings, the briefs of counsel, and the pleadings on file; and the Court having heard oral arguments by counsel for the respective parties and the recommendation of the Court appointed guardian ad litem for the minor; and the Court being otherwise advised in the premises; NOW THEREFORE,

IT IS ORDERED that the decision and Order of the Probate Court terminating the guardianship of [the guardians] over [the child] is hereby reversed and said guardianship is hereby reinstated pending further proceedings in accord with this Order.

IT IS FURTHER ORDERED that the Probate Court shall amend its Opinion, taking into consideration the Child Custody Act of 1970 or any other statutory provisions which would be a basis for the proper exercise of discretion by the Probate Court.

IT IS FURTHER ORDERED that the record below may be supplemented if the Probate Court in the exercise of its discretion deems such supplementation necessary or helpful for a proper exercise of discretion.

IT IS FURTHER ORDERED the appointment of [the guardian ad

The Court of Appeals reversed the decision of the circuit court. *In re Rankin,* 175 Mich App 465; 438 NW2d 324 (1989). After reviewing the facts of the case and the language of the statute, the Court of Appeals concluded that the withdrawal of parental consent to a limited guardianship leaves the probate court with no choice but to terminate the guardianship. In an opinion by Judge McDONALD, the Court of Appeals explained:

> It is clear that a limited guardianship may be created under this section only with parental consent to create the same, § 424[a](1)(a) [MCL 700.424a(1)(a); MSA 27.5424(1)(1)(a)]. Moreover, subsection (2) explicitly states that a parent may file a petition to terminate "the guardianship at any time." Thus, as the guardianship is created only upon the parents' petition and is conditioned upon their consent, we find that the filing of a subsequent petition withdrawing this consent acts to terminate the guardianship.
>
> We reject the argument that the Legislature's use of the word "may" in the last sentence of subsection (2) denotes an intent to grant a probate judge discretion when faced with a petition to terminate a limited guardianship. This sentence deals not with the termination of the "guardianship," the vehicle under which the court attains jurisdiction over the minor, but with the termination of the appointment of a particular "guardian." Likewise, we reject the circuit court's reference to a standard of discretion which requires inquiry of "the best interests of the minor." The circuit court appears to have applied this standard to § 424a based on its inclusion in § 441, MCL 700.441; MSA 17.5441. However, § 441 deals with the removal or substitution of a particular "guardian," not the guardianship itself.

litem] for the minor child shall continue until terminated by the Probate Court or, in the event of further proceedings in the Circuit Court, by this Court.

In finding a legislative intent to permit termination of a limited guardianship upon withdrawal of parental consent, we recognize as valid respondents' concern that children may be removed from good, stable homes and placed with unfit parents, in unfit homes. However, we note the existence of other means to prevent such occurrences. Should the minor's return to the natural parents appear to pose a serious threat to the emotional or physical well-being of the child, nothing in § 424a would prevent the filing of a counterpetition under § 424(2)(b), MCL 700.424(2)(b); MSA 27.5424(2)(b), requesting the appointment of a regular guardian, or under MCL 712A.2(b); MSA 27.3178(598.2)(b) requesting that the minor be made a ward of the court. [*Rankin,* 175 Mich App 468-469.]

Writing in dissent, Judge RICHARD I. COOPER began by disputing the majority's analysis of the language:

I would read MCL 700.424a; MSA 27.5424(1) to require the probate court to exercise its discretion when granting a parental petition to either create or terminate a limited guardianship. In both instances the statute states that the court "may" act in accordance with the petition.

I agree that parental consent to both the appointment of a limited guardian and the suspension of parental rights are required before the probate court may grant the petition to appoint a limited guardian. However, I do not agree that a parental petition for termination of the guardianship operates to erase the consent given at the guardianship's inception. In other words, consent is required before creating a limited guardianship under this section, but continuance of the guardianship does not depend solely upon continued parental consent. To hold otherwise requires changing the statutory language in § 424a(2) from "may be terminated" to "shall be terminated."

I disagree with the majority's position that the

last sentence in § 424a(2) refers only to terminating the appointment of a particular guardian. That the "appointment of a limited guardian" refers to both a guardianship itself and to a particular guardian, is supported by the language in § 424a(1) which also uses the phrase "appoint[ment of] a limited guardian." Such an appointment obviously creates a "guardianship" while termination of the appointment would, in most cases, also terminate the guardianship.

The statutory language in this section stands in stark contrast to provisions for automatic termination mandated when a person, for whom a testamentary appointment of a guardian is made, files an objection to the appointment. MCL 700.441(4); MSA 27.5441(4). If the Legislature intended the probate court to perfunctorily grant termination under § 424a, it could have provided for an automatic termination upon filing of a petition like that provided in § 441(4). [*Rankin,* 175 Mich App 469-470.]

From there, Judge COOPER went on to explain the importance of granting the probate court a measure of discretion in the handling of such cases:

The fact that so many areas involving child custody and child welfare are treated with great care and concern for the best interests of the minor leads me to conclude that, once a consensual limited guardian is appointed, termination is not automatically required when a parent has a change of heart.

Parents who recognize a need to seek probate court help with a perceived inability to provide for their child should be given credit for consenting to the appointment of a limited guardian rather than passively waiting for someone outside the nuclear family to recognize a deficiency and file a petition based on abuse, neglect or abandonment. However, once the parents have consented to the jurisdiction

of the probate court, the statute does not grant an absolute right to terminate the arrangement.

I would hold that § 424a provides the probate court with discretion to grant or deny a petition to terminate a limited guardianship. The proper factors for consideration will differ depending on the circumstances of the guardianship's creation. In some instances, considering the factors listed in the Child Custody Act, MCL 722.21 *et seq.*; MSA 25.312(1) *et seq.,* would be appropriate. While giving due deference to parental rights, the court should not be absolutely bound to immediately grant a petition for termination when the circumstances merit a different decision.

The probate court's discretion should extend to providing guidelines for reintroducing a young child to her natural parents when, as here, the separation has been of a substantial duration. I believe that recognizing the probate court's discretion in granting petitions to terminate limited guardianships is essential to provide a young child with the stability necessary for normal growth and development. [*Rankin,* 175 Mich App 470-471.]

The guardians have timely filed in this Court an application for leave to appeal.[9]

III

The other case that is before us is *In re Dumas.* It concerns a boy born to a young mother in January 1984.

In accordance with an agreement that was evidently made prior to the child's birth, he was entrusted almost immediately to the care of his aunt. She took him home from the hospital three days after his birth, and she raised him for the first five years of his life.

A few weeks after the birth, the probate court

[9] They have also moved to stay the decision of the Court of Appeals.

granted the mother's petition that the aunt be appointed a limited guardian for the child.

The guardianship continued for several years, and it appears that the guardian has ably fulfilled her role.

On or about the child's fifth birthday, the guardian filed a petition to adopt him. A week later, the mother responded with a petition to terminate the guardianship.

This matter was heard on several occasions in early 1989. Before the probate court ruled in *Dumas,* the Court of Appeals issued its March 1989 ruling in *Rankin.*

In deciding *Dumas,* the probate judge expressed sympathy for the guardian's position, but felt constrained by the decision of the Court of Appeals in *Rankin.* Relying upon that authority, the probate court terminated the limited guardianship, denied an evidentiary hearing as to the best interests of the child, and denied the guardian's request that the court stay its order terminating the limited guardianship.

The guardian's application for leave to appeal in the Court of Appeals[10] was denied over the dissent of Judge SHEPHERD.[11]

The guardian has timely applied to this Court, seeking leave to appeal.[12]

IV

The Legislature placed two statements in MCL 700.424a(2); MSA 27.5424(1)(2) that may give guid-

[10] The probate court had taken the necessary steps to permit an appeal directly to the Court of Appeals. MCR 5.801(F).

[11] The Court granted immediate consideration and, also over the dissent of Judge SHEPHERD, denied a motion for stay.

[12] The aunt has also moved for immediate consideration and for a stay.

ance as to the extent of the probate court's authority where parents petition for termination of a limited guardianship. First, the statute provides that parents may petition for termination of the limited guardianship "at any time." Second, a limited guardian "may" be terminated upon request of the parents.

Two ways of interpreting these passages are stated in the majority opinion and the dissenting opinion in *Rankin.* Since the language of the statute does not clearly provide the extent of the probate court's authority when ruling on a motion to terminate a limited guardianship, we must locate a reasonable construction of the statute that implements the purpose of the Legislature.[13] *People v Stoudemire,* 429 Mich 262, 265-266; 414 NW2d 693 (1987).

Looking at the entire text of MCL 700.424a; MSA 27.5424(1), and its place in article 4 of the Revised Probate Code, we are persuaded that the Legislature intended limited guardianships to be subject to termination in the sole discretion of the parent or parents whose petition led to the creation of the limited guardianship.[14] The Legislature clearly intended to permit a formal guardianship to exist where parents who are temporarily unable to care for their children take the laudatory step of providing that someone else will, for a time, assume formal responsibility for the care of the children. Such a decision by a parent is very difficult to make, and would be greatly discouraged

[13] A review of the brief legislative history of MCL 700.424a; MSA 27.5424(1) sheds no additional light on this question.

[14] The use of the word "may" in the second sentence of MCL 700.424a(2); MSA 27.5424(1)(2) does not preclude a determination that the probate court is obliged to terminate the limited guardianship. See, generally, *Smith v School Dist No 6, Fractional, Amber Twp,* 241 Mich 366, 368-369; 217 NW 15 (1928), *Moore v Parole Bd,* 379 Mich 624, 631-632; 154 NW2d 437 (1967) (opinion by SOURIS, J.), and *Kment v Detroit,* 109 Mich App 48, 61-62; 311 NW2d 306 (1981).

if the law did not reserve to the parent a clear opportunity to summon the child home to the family.[15]

At the same time, we are confident that the Legislature, which has established the limited guardianship for the benefit of children, could not have intended that the procedure worked to the detriment of children. Although the probate court must terminate the limited guardianship upon petition of the parents, it therefore must retain the authority to enter reasonable orders to facilitate the reintegration of the child into the family.[16]

V

For these reasons, we conclude that the probate court correctly ruled in *Rankin.* That is, the court stated in its opinion that it had no option but to terminate the limited guardianship, and it then entered an order directing the parties to work together carefully to effect the reintegration of the child into her family.

In *Dumas,* the probate court correctly determined that it was obliged to terminate the limited guardianship, but it failed to recognize its discretion to enter interim orders to aid the transition.[17]

As always, we have carefully reviewed the records in these cases, and we are well aware of the facts and circumstances. Thus we know full well

---

[15] As at any other time, the parent's right to bring the child home can be limited by the probate court where grounds exist under other statutory provisions, such as MCL 712A.2(b); MSA 27.3178(598.2)(b) and MCL 700.424(2)(b); MSA 27.5424(2)(b).

[16] In some circumstances, such as where the limited guardianship has existed only a short time, such transitional orders may be unnecessary.

[17] The probate court having entered an unqualified May 2, 1989, order terminating the limited guardianship, the transition of the child to his family may be complete, and further proceedings may now be unnecessary.

how disturbing this outcome will be to the guardians, both in *Rankin* and in *Dumas.* The Legislature has established the statutory procedure here at issue, and our function is to apply the law in a manner that effects the legislative purpose. The options now available to the guardians are those established by the Legislature.

## VI

In lieu of granting leave to appeal in *Rankin,* we therefore modify the judgment of the Court of Appeals, reverse the judgment of the circuit court, and reinstate the judgment of the probate court.[18] We remand *Rankin* to the probate court for such further proceedings as are appropriate in accordance with this opinion. MCR 7.302(F)(1).

In lieu of granting leave to appeal, we remand *Dumas* to the probate court for further consideration in light of this opinion.[19]

RILEY, C.J., and LEVIN, BRICKLEY, CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred.

[18] The motion for stay is denied.

[19] The motion for immediate consideration is granted. The motion for stay is denied.