*In re* MARTYN

Docket No. 94202. Submitted March 23, 1987, at Detroit. Decided May 6, 1987.

Clarence George Martyn, Jr., and his wife, Mary Martyn, were divorced in 1974 and custody of their minor child, Clarence George Martyn III, was awarded to the mother. Mary Martyn married Gary Dusseau in 1976. In 1985, the Dusseaus filed a petition to terminate Mr. Martyn's parental rights to the child so that Gary Dusseau could adopt him. Following hearings, the Oakland Probate Court, Norman R. Barnard, J., terminated Mr. Martyn's parental rights to his son for failure to provide regular support and substantially failing to contact or communicate with the minor child for a period of two years. Mr. Martyn appealed.

The Court of Appeals *held:*

1. The probate court did not err in not considering Mr. Martyn's reasons for not providing support. Consideration of reasons for noncompliance with a support order is left to the discretion of the probate court.

2. Mr. Martyn visited his son only twice and called him only once in the two years preceding the filing of the petition to terminate parental rights. Under the circumstances in this case, two visits and one phone call in two years is a substantial failure to visit, contact or communicate with a child.

Affirmed.

1. ADOPTION — TERMINATION OF PARENTAL RIGHTS — SUPPORT ORDERS — ADOPTION CODE.

Consideration of reasons for a parent's noncompliance with a child support order is left to the discretion of the probate court in proceedings to terminate the parent's parental rights to the child brought under the Adoption Code (MCL 710.51[6]; MSA 27.3178[555.51][6]).

REFERENCES

Am Jur 2d, Parent and Child §§ 7, 34, 36, 41 *et seq.*; 75.

Am Jur 2d, Support of Persons, §§ 17, 18, 21.

See the annotations in the Index to Annotations under Adoption of Children.

2. ADOPTION — TERMINATION OF PARENTAL RIGHTS — ADOPTION CODE.
  Visiting a child only twice and telephoning once within a two-
  year period may constitute substantial failure to visit, contact
  or communicate with the child for purposes of termination of
  parental rights proceedings brought pursuant to the Adoption
  Code (MCL 710.51[6]; MSA 27.3178[555.51][6]).

*UAW-GM Legal Services Plan* (by *Kathleen M. Cummins*), for petitioner.

*Sterling, Schilling & Thorborn* (by *Ronald F. Schilling*), for respondent.

*Jon Gaskell,* Guardian ad litem for Clarence George Martyn III.

Before: WAHLS, P.J., and R. M. MAHER and J. T. KALLMAN,* JJ.

PER CURIAM. Respondent, Clarence George Martyn, Jr. appeals as of right from the June 24, 1986, order of the Oakland Probate Court terminating his parental rights as to Clarence George Martyn III under § 51(6) of the Michigan Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6), for failure to provide regular support and substantially failing to contact or communicate with the minor child for a period of two years.

Respondent married petitioner Mary Dusseau in 1971. A son, Clarence George Martyn III (Butch), was born on May 9, 1972. A judgment of divorce was entered on February 22, 1974.

The divorce judgment awarded petitioner legal custody of Butch. The judgment provided respondent with visitation rights each Wednesday and Sunday, plus one overnight visit per month. When the child reached age two, respondent was allowed two overnight visits per month. When the child

---

* Circuit judge, sitting on the Court of Appeals by assignment.

reached age three, respondent was allowed visitation for one week in the summer. After age five, respondent was allowed two weeks of visitation in the summer. Respondent was ordered to pay $15 per week in child support as well as the child's medical, dental and hospital expenses.

On December 27, 1976, petitioner married Gary Dusseau. Butch had resided with petitioner prior to her remarriage. Afterward, Butch continued to reside with petitioner and Gary Dusseau through the termination hearing on May 8, 1986. For the duration of his marriage to petitioner, Gary Dusseau has provided the primary support for Butch.

Respondent provided some support for Butch from the time of his divorce through July 1, 1982. There were, however, frequent interruptions in payments and ten show cause hearings were scheduled. The earlier interruptions in support were triggered in part by periods of unemployment and, in part, by simple noncompliance. However, in 1982, respondent allegedly became disabled as a result of a 1970 back injury. In June of 1982, respondent left employment at a doctor's clinic because it entailed heavy lifting. From June of 1982 until June of 1983, respondent received an unspecified amount in unemployment compensation benefits. From June of 1983 through the time of the termination hearing, respondent received $145 per month in general assistance benefits supplemented by $75 per month in food stamps. Respondent also earned some money in that time period from a newspaper route. It is undisputed that respondent paid no child support after July 1, 1982.

Respondent visited Butch sporadically between the time of his divorce and 1981. In part, the lack of visitation in that time period was due to petitioner's objections to respondent's taking Butch to

his girlfriends' homes. The problem was complicated by respondent's discomfort in visiting his son in petitioner's home, particularly after her remarriage. However, in 1981, respondent began living with Dianne Alexander, whose home was acceptable to petitioner for visits.

From 1981 until 1983, respondent saw Butch more frequently. Nevertheless, there were periods of two to six months without a visit even in this time period. Respondent remembered only three possible visits with his son in 1983: (1) Memorial Day; (2) Halloween; and (3) Christmas. Petitioner remembered only two visits between respondent and Butch in 1983—Memorial Day and Halloween. Dianne Alexander recalled that there were regular visits—every four to six weeks—until October of 1983. At that time, Alexander began working odd hours and her car was unavailable to respondent. It is undisputed that respondent did not visit Butch after October or December of 1983. Respondent did, however, remember calling Butch on one occasion.

On May 1, 1985, the Dusseaus filed a petition to terminate respondent's parental rights so that Gary Dusseau could adopt Butch. Hearings were held on October 29, 1985, through May 8, 1986. On June 24, 1986, the probate court issued an order terminating respondent's parental rights.

On appeal, respondent argues that the statutory requirements for terminating his parental rights were not proven at the evidentiary hearing. The statute at issue, § 51(6) of the Michigan Adoption Code, provides:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and

if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6); MSA 27.3178(555.51)(6).]

A parent's right to the custody of his or her children is a liberty interest protected by the Fifth and Fourteenth Amendments to the United States Constitution. *In re Gentry,* 142 Mich App 701, 705; 369 NW2d 889 (1985). The right to custody is not an absolute right, however, and may be terminated. *Doe v Oettle,* 97 Mich App 183, 186; 293 NW2d 760 (1980). A petitioner in an adoption proceeding must prove by clear and convincing evidence that termination of parental rights is warranted. *In re Colon,* 144 Mich App 805, 813; 377 NW2d 321 (1985). The standard of review in termination of parental rights cases is the "clearly erroneous" standard. *In re Cornet,* 422 Mich 274; 373 NW2d 536 (1985). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, after examining all of the evidence, is left with a definite and firm conviction that a mistake has been made. *In re Riffe,* 147 Mich App 658; 382 NW2d 842 (1985), lv den 424 Mich 904 (1986).

Respondent first challenges the probate court's findings regarding subparagraph (a) of the statute quoted *supra*—his failure to provide support payments. According to respondent, he was unable to provide support. Indeed, there is some evidence of record indicating that respondent was unable to provide even for himself. On the other hand, it is undisputed that respondent was under a continuing order to pay $15 per week in child support for Butch. It is also undisputed that respondent paid no support after July 1, 1982.

As we have previously explained:

> The Legislature is presumed to know of and legislate in harmony with existing law. *Rochester Community Schools Bd of Ed v State Bd of Ed,* 104 Mich App 569, 578; 305 NW2d 541 (1981). In Michigan a parent who cannot comply with a child support provision in a divorce decree may petition the circuit court for a modification. The circuit court is statutorily empowered to modify orders for child support upon a showing of a change in circumstances. MCL 552.17; MSA 25.97; *Jacobs v Jacobs,* 118 Mich App 16; 324 NW2d 519 (1982). In fashioning a support order or a modification, the court must consider a number of factors, including the noncustodial parent's income and ability to pay. *Vaclav v Vaclav,* 96 Mich App 584; 293 NW2d 613 (1980); *Cochran v Buffone,* 137 Mich App 761; 359 NW2d 557 (1984). Thus, ability to pay is already factored into a child support order, and it would be redundant to require a petitioner under the Adoption Code to prove the natural parent's ability to pay as well as that parent's noncompliance with a support order.
>
> For the above reasons, we hold that, in cases where a child support order has been entered, MCL 710.51(6)(a) may be satisfied by showing that the natural parent has "failed to substantially comply with the [support] order, for a period of 2 years or more before the filing of the petition." [*In re Colon, supra,* 811-812.]

Thus, under subparagraph (a) as construed in *Colon,* the probate court was entitled to find a failure to support.

We also observed in *Colon* that the language of § 51(6) of the Adoption Code is permissive rather than mandatory:

> [T]he court upon notice and hearing *may issue* an order terminating the rights of the other parent if both of the following occur . . . . (Emphasis added.) [*In re Colon,* p 812.]

Thus, we concluded that the probate court had discretion to consider the *Colon* respondent's reasons for violating the support order and, had respondent satisfactorily explained the nonsupport, the probate court might have declined to terminate his parental rights.

According to respondent, the probate court erred by finding nonsupport when he, unlike the *Colon* respondent, offered satisfactory reasons for failing to comply with the order for support. This argument misconstrues our obiter dictum in *Colon* by suggesting that the probate court was *obliged* to consider respondent's reasons for noncompliance with the order for support. As we noted in *Colon,* the statute is permissive—the probate court has discretion to consider the reasons for noncompliance with a support order. Conversely, as we now hold, the probate court has discretion to disregard the respondent's reasons for violating the support order. Since the probate court's decision to do so was an exercise of discretion, rather than a finding of fact, we will review it on an abuse of discretion standard, rather than a clearly erroneous standard. Noting that the medical evidence underlying respondent's claim of disability is equivocal at best and further noting that respondent had failed to

comply with the support order during some periods of employment, we are unable to find an abuse of discretion. See *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959) (defining "abuse of discretion"). Therefore, for the purpose of this appeal, we find no error in the probate court's failure to consider respondent's reasons for not providing support.

Respondent also challenges the probate court's findings regarding subparagraph (b), § 51(6) of the Michigan Adoption Code—his failure to regularly and substantially visit or communicate with Butch. Again, it is undisputed that respondent failed to visit and communicated by phone on only one occasion after October of 1983. However, respondent argues that, because his visits between May 1, 1983, and October, 1983, were within two years of the filing of the petition, the probate court erred by concluding that there had not been substantial visitation or communication. We disagree.

Respondent could only recall that he "possibly" visited Butch three times between May and December of 1983. Even if we gave credence to the testimony of Dianne Alexander, that there were visits every four to six weeks between May and October of 1983, respondent would only have visited his son five times in two years. The probate court did not give credence to Dianne Alexander's testimony, but instead cited petitioner's testimony that respondent visited only twice between May and October of 1983. Given that the factual issue was one of credibility of witnesses, and given further that petitioner's testimony was by all appearances credible, we are unable to say that the probate court erred in doing so. Certainly we are unable to say that the probate court clearly erred in giving credence to petitioner's testimony. *In re Riffe, supra.* We are therefore obliged to affirm the

probate court's finding in this regard. *In re Cornet, supra.* We conclude that respondent visited his son only twice in the two years preceding the filing of the petition to terminate parental rights.

The only remaining question is whether respondent "substantially failed" to visit when he visited only twice in two years. We acknowledge that the phrase "substantially failed" has not been previously construed.[1] We also express some doubt that the phrase can be reduced to a specific number of visits within two years. We would, for instance, be less likely to consider a specific number of visits late in the two-year period to be "substantial failure." We would also be less likely to consider a specific number of visits "substantial failure" if they required the respondent to overcome significant legal, physical or geographic obstacles. Here, however, respondent had not visited Butch at all for the last twenty months of the two-year period. Furthermore, although respondent claimed that he had no transportation, he acknowledged an ability to attend regular Jaycee meetings by hitchhiking. In fact, respondent testified that he had been in the City of Pontiac, where the Dusseaus resided, once every three to four months in the 1983-85 period. Furthermore, respondent could offer no reason for failing to call Butch other than the fact that it would have been a toll call. Finally, we note that respondent suffered no legal obstacles to more frequent visitation. Under these circumstances, we believe that two visits and one phone call in two years is a substantial failure to visit, contact or communicate with a child. We therefore

[1] We are aware that in *In re Colon,* 144 Mich App 805, 814; 377 NW2d 321 (1985), a panel of this Court held that eight to eleven visits in two years was a substantial failure to visit, contact or communicate, but the *Colon* Court apparently treated the issue as one of fact.

affirm the probate court's holding for petitioner, terminating respondent's parental rights.

Affirmed.