*In re* HALBERT

Docket No. 190462. Submitted June 5, 1996, at Grand Rapids. Decided July 19, 1996, at 9:05 A.M.

Verda and Wayne O'Berry petitioned the Ottawa County Probate Court to terminate the parental rights of Buddy D. Halbert, Sr., Verda O'Berry's former spouse, to Buddy B. Halbert, Jr., a child of that former marriage. The petition was brought pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6) for the purpose of allowing Wayne O'Berry to adopt the child and alleged as the statutory basis for the termination of the respondent's parental rights that the respondent had failed to support or contact the child for a period of two years or more. Following a hearing, the court, Mark A. Feyen, J., found that during the two-year period preceding the filing of the petition for termination of parental rights the respondent had been incarcerated and lacked the ability to visit or support the child, held on the basis of the holding in *In re Colon*, 144 Mich App 805 (1985), that the incarceration permitted the court to look to the two-year period preceding the incarceration rather than the two-year period preceding the filing of the petition, found that in that prior two-year period the respondent had failed to support or visit the child although having the ability to do so, and, accordingly, terminated the respondent's parental rights. The respondent appealed.

The Court of Appeals *held*:

MCL 710.51(6); MSA 27.3178(555.51)(6) clearly and unambiguously provides that the parental rights of a noncustodial parent can be terminated only where that parent has failed to support or visit the child "for a period of 2 years or more before the filing of the petition." There is nothing in the statute that permits a court to look to some earlier two-year period because of the incarceration of the noncustodial parent. The probate court's reliance on the opinion in *In re Colon* is misplaced, because that holding is obiter dictum to the extent that it may stand for the proposition that incarceration extends back the two-year period. Accordingly, the probate court erred as a matter of law in failing to apply the statute as written.

Reversed.

ADOPTION — TERMINATION OF PARENTAL RIGHTS — INCARCERATION.

> A noncustodial parent's parental rights can be terminated for the pur-
> pose of allowing the adoption of a child only where that noncus-
> todial parent's failure to support or visit the child has occurred dur-
> ing the two-year period immediately preceding the filing of the peti-
> tion to terminate parental rights; a noncustodial parent's
> incarceration does not permit a court to look to an earlier two-year
> period (MCL 710.51[6]; MSA 27.3178[555.51][6]).

*Swaney, Thomas and Moritz, P.C.* (by *Holly F. Underwood*), for the petitioners.

*Daniel J. Fojtik*, for the respondent

Before: O'CONNELL, P.J., and SAWYER and G. R. COR-SIGLIA,* JJ.

O'CONNELL, P.J. In this appeal as of right, respondent challenges the validity of a probate court order terminating his parental rights to his soon-to-be sixteen-year-old son Buddy pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6). The termination of respondent's parental rights cleared the way for Buddy's adoption by his stepfather, petitioner Wayne O'Berry. We reverse.

I

Respondent and petitioner Verda O'Berry (hereinafter O'Berry) are the birth parents of Buddy and Brandy Halbert. The status of respondent's parental rights with regard to Brandy are not at issue in this appeal.

Respondent and O'Berry divorced in 1984. Under the terms of the divorce judgment, O'Berry received physical custody of the children; both parents shared

---

* Circuit judge, sitting on the Court of Appeals by assignment.

legal custody. Respondent was afforded visitation and required to pay child support.

O'Berry married Wayne O'Berry on June 12, 1984.

The circuit court amended the judgment of divorce in 1988 after respondent and O'Berry agreed to transfer physical custody of Brandy to respondent. Additionally, the amendment relieved respondent of his weekly child support obligation.

By mid-1990, respondent's relationship with Buddy had so deteriorated that respondent ceased physical contact with his son. Respondent ceased all communication with Buddy in December 1990.

In October 1992, Brandy disclosed to O'Berry that respondent had sexually molested her. Respondent was imprisoned, thereafter, as a result of his sexual abuse of Brandy.

On August 8, 1995, the O'Berrys filed a petition for stepparent adoption pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6), seeking authorization for petitioner Wayne O'Berry to adopt Buddy on the grounds that respondent had failed to provide support for Buddy and had failed to visit or contact Buddy for a period of two years or more. The O'Berrys also filed that same day a petition seeking the termination of respondent's parental rights with regard to Buddy pursuant to MCL 710.51(6); MSA 27.3178(551.51)(6).

The trial court conducted a termination hearing on October 13, 1995. At the close of the parties' proofs, the court explained from the bench that it "normally" looks to the two-year period that immediately precedes the filing of the termination petition, as required by MCL 710.51(6); MSA 27.3178(555.51)(6), to determine whether the grounds for termination exist. The court then concluded that respondent had

been incarcerated during the two-year period immediately preceding the filing of the petition and, consequently, lacked the ability either to provide support for Buddy or to visit Buddy. Rather than deny the O'Berrys' petitions, however, the court determined that a noncustodial parent's incarceration "tolls the running of the statute, and . . . you look at the period of time immediately preceding the incarceration, not the two-year period of time immediately preceding the filing of the petition." The court reached this conclusion in reliance upon this Court's decision in *In re Colon*, 144 Mich App 805; 377 NW2d 321 (1985). The court thereafter looked to the two-year period immediately preceding respondent's incarceration and determined that it had been established by clear and convincing evidence that respondent made no visits to and paid no support for Buddy, despite respondent's ability to do both. The court then terminated respondent's parental rights with respect to Buddy.

II

Respondent's parental rights were terminated under the Michigan Adoption Code pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6), which provides in pertinent part:

If the parents of a child are divorced, . . . and if the parent having legal custody of the child subsequently marries and the parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child, . . . for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

At issue in the present case is whether, in the case of an incarcerated respondent, the court looks to the two-year period preceding incarceration and, if not, whether an incarcerated respondent may be considered to have the ability to support his child while incarcerated, thereby opening the door for termination of his rights under this statute. Respondent argues that the phrase clearly and unambiguously requires a trial court to look to the two-year period immediately preceding the filing of the termination petition to determine if the grounds for termination exist. The O'Berrys argue that the legislative intent behind the enactment of MCL 710.51(6); MSA 27.3178(555.51)(6) is better honored if the statute is construed to allow the trial court to look to the two-year period falling immediately before the commencement of a noncustodial parent's incarceration, rather than the two-year period immediately preceding the filing of the petition, when the noncustodial parent is incarcerated at the time of the filing of the petition. What construction, if any, we are to afford the statute presents a question of first impression.[1] We conclude

---

[1] Although several panels of this Court have looked to the two-year period immediately preceding the filing of a termination petition when evaluating whether trial courts had correctly ordered termination pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6), see, e.g., *In re DaBaja*, 191 Mich App 281, 291; 477 NW2d 148 (1991); *In re Meredith*, 162 Mich App 19, 24; 412 NW2d 229 (1987); *In re Martyn*, 161 Mich App 474, 482; 411 NW2d 743 (1987), and although another panel of this Court looked to the two-year period immediately preceding the noncustodial parent's commencement of incarceration and not the two-year period immediately preceding the filing of the petition, *In re Colon*, 144 Mich App 805, 812, 814;

that respondent advances the correct interpretation of the statute at issue.

Where the language employed in a statute is plain, certain, and unambiguous, the statute must be applied as written without interpretation. *Grand Rapids v Crocker*, 219 Mich 178, 182; 189 NW 221 (1922); *Wayne Co v Dep't of Corrections Director*, 204 Mich App 712, 714; 516 NW2d 535 (1994). This literal application of the statute is mandated because the Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc*, 182 Mich App 741, 744; 453 NW2d 301 (1990).

We conclude that the phrase "for a period of 2 years or more before the filing of the petition" is plain, certain, and unambiguous. A bare reading of the statute reveals that the two-year statutory period must commence on the filing date of the petition and extend backwards from that date for a period of two years or more. Accordingly, we determine that the statute is satisfied and a petition for termination may be granted where the grounds for termination have been shown to exist for at least two years immediately preceding the filing of the termination petition.

In the instant case, the trial court refused to apply the statute as written, opting instead to interpolate a "tolling" provision into the statute on the basis of this Court's decision in *In re Colon, supra*. We are unpersuaded that our decision in *In re Colon* compels us to afford the statutory phrase at issue any meaning other than its plain meaning.

377 NW2d 321 (1985), no panel of this Court has ever specifically addressed the issue presented in this case.

In *In re Colon, supra,* pp 808-812, this Court was asked to determine whether MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a) required a stepparent who wished to adopt his stepchildren to prove both that the noncustodial parent had failed to comply with a support order and that the noncustodial parent had the ability to comply with the order. After engaging in statutory construction, we opined:

> For the above reasons, we hold that, in cases where a child support order has been entered, MCL 710.51(6)(a) [MSA 27.3178(555.51)(6)(a)] may be satisfied by a showing that the natural parent has "failed to substantially comply with the [support] order, for a period of 2 years or more before the filing of the petition." Such a showing was clearly made in the case at bar where the probate court found that the relevant time period was two years preceding respondent's incarceration. [*In re Colon, supra,* p 812.]

This Court was also asked to determine whether the evidence sustained the probate court's finding that the respondent had the ability to visit, contact, or communicate with his children, as required by MCL 710.51(6)(b); MSA 27.3178(555.51)(6)(b). *In re Colon, supra,* p 813. We rejected the respondent's argument that he lacked the ability to visit his children, opining:

> In the instant case, the probate court specifically recognized that proof by clear and convincing evidence was necessary, and that a showing of ability to visit was required under MCL 710.51(6)(b) [MSA 27.3178(555.51)(6)(b)]. The court found that respondent had not been welcome inside petitioner's home but had been permitted to take the children on his visitations. Despite this, he had visited only eight to eleven times in 2-½ years. The court termed this visitation "minimal" and found that respondent had failed regularly and substantially to visit, contact, or communicate with the children for two years preceding his incarceration.

We cannot say that the findings of the probate court are clearly erroneous. Repsondent's [sic] visits were sporadic, and his claim that petitioner effectively blocked his efforts to see the children more frequently is not convincing. Petitioner testified that respondent was aware of the children's whereabouts and telephone number at all times. He did not request a change in the visitation order (which provided for "reasonable visitation") or complain to the Friend of the Court about being denied visitation. With this evidence on the record, we reject respondent's argument that he did not have the "ability to visit" within the meaning of MCL 710.51(6)(b) [MSA 27.3178(555.51)(6)(b)]. [*In re Colon, supra,* pp 813-814.]

The trial court's reliance on *In re Colon* is misplaced. In *In re Colon,* we neither were asked to decide nor did decide how the two-year statutory period was to be calculated for purposes of MCL 710.51(6); MSA 27.3178(555.51)(6). To the extent that we favorably described the "two years preceding respondent's incarceration" as the relevant statutory period, our description constitutes, at most, obiter dictum. We conclude, therefore, that *In re Colon* does not provide meaningful authority for the proposition that a noncustodial parent's incarceration "tolls the running of the statute, and [requires the trial court to] look at the period of time immediately preceding the incarceration." Accordingly, our resolution of the question presented must be guided solely by the time-honored principles of statutory construction.

Guided by those time-honored principles, we are persuaded that the trial court committed an error of law when it refused to apply MCL 710.51(6); MSA 27.3178(555.51)(6) as written and, correspondingly, when it refused to look to the two-year period imme-

diately preceding the filing of the petition to determine whether termination was warranted.

The O'Berrys argue that, under the circumstances of this case, it is unfair to Buddy and his stepfather to enforce MCL 710.51(6); MSA 27.3178(555.51)(6) as written. Although we sympathize with the O'Berrys, we are unpersuaded that any unfairness perceived by the O'Berrys is the direct consequence of any deficiency in the drafting of the statute or in our adherence to the certain and unambiguous language and plain meaning of the statute. Rather, our inability to resolve the issue placed before us in a manner desired by the O'Berrys is a consequence of the O'Berrys' invocation of a statute under which their desired end may not be attained.

The primary purpose of MCL 710.51(6); MSA 27.3178(555.51)(6) is to allow a stepparent who provides the material and emotional support to a child that would be expected of the child's legal parent to adopt the child of a noncustodial parent who has essentially abandoned the child and who has refused to, or is unavailable to, consent to the adoption. *In re Colon, supra,* pp 810-811. This purpose may be effectuated only where the noncustodial parent is situated in circumstances whereby that parent can earn a living and acquire the wherewithal to support a child, where the noncustodial parent has ignored or abandoned the natural obligations owed a child by a parent, and where the noncustodial parent has refused, or intentionally has become unavailable, to consent to the adoption. Respondent's lengthy incarceration before the filing of the petitions for termination of his parental rights and for adoption—and, hence, his inability to earn a living and acquire the wherewithal

to provide support for Buddy—take respondent outside the intended scope of MCL 710.51(6); MSA 27.3178(555.51)(6).

Reversed. We do not retain jurisdiction.