*In re* HILL

Docket No. 195806. Submitted December 17, 1996, at Detroit. Decided February 21, 1997, at 9:30 A.M.

Loree C. Hill petitioned the St. Clair County Probate Court for the termination of the parental rights of Paul A. Sienkiewicz, Jr., to Crystal L. Hill pursuant to § 51(6) of the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6), after Hill's husband filed a petition to adopt the child. Sienkiewicz, in a paternity action, had been adjudged to be the child's father and ordered to pay support for the child. The court, Robert R. Spillard, J., terminated the respondent's parental rights. The respondent appealed.

The Court of Appeals *held*:

1. Section 51(6) provides in part that if the parents of a child are unmarried but the father has acknowledged paternity and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the probate court upon notice and hearing may issue an order terminating the rights of the noncustodial parent if the noncustodial parent, having the ability to support or assist in supporting the child, has failed or neglected to provide regular and substantial support for the child or, if a support order has been entered, has failed to substantially comply with the order for a period of two years or more before the filing of the petition and if the noncustodial parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of two years or more before the filing of the petition.

2. The two-year period referred to in § 51(6) commences on the filing date of the petition and extends backwards from that date. The probate court in this case erred in concluding that any two-year period before the filing of the petition satisfies the requirements of § 51(6). The probate court's error does not require a reversal of the termination of parental rights because the record supports a finding that the respondent, for two or more years before the filling of the petition, failed to substantially comply with the support order that required him to pay confinement expenses, blood-testing fees, and the child's health-care expenses and had regularly and substantially failed to communicate with the child.

3. The probate court did not abuse its discretion in considering the best interests of the child. Although § 51(6) makes no reference to such interests, the Legislature, in § 22(f) of the Adoption Code, MCL 710.22(f); MSA 27.3178(555.22)(f), has set forth the factors to be considered in determining the best interests of an adoptee, making it unlikely that a probate court is prohibited from considering a child's best interests when ruling with regard to a petition filed pursuant to § 51(6).

4. Various factual findings by the probate court that were challenged by the respondent either are not clearly erroneous, because they are supported by the evidence, or are harmless error, because one error was not relevant to § 51(6) and the other cannot change the finding that the respondent did not regularly and substantially visit the child.

Affirmed.

1. ADOPTION — TERMINATION OF PARENTAL RIGHTS.

A parent's failure or neglect to provide regular and substantial support or to substantially comply with a support order and the parent's regular and substantial failure or neglect to visit, contact, or communicate with the child must be for two or more years immediately preceding the filing of the petition for the termination of the parent's parental rights when termination is sought under § 51(6) of the Adoption Code (MCL 710.51[6]; MSA 27.3178[555.51][6]).

2. ADOPTION — TERMINATION OF PARENTAL RIGHTS — BEST INTERESTS OF CHILD.

The best interests of a child, as defined in § 22(f) of the Adoption Code, may be considered by a probate court when deciding whether to terminate the parental rights of a parent pursuant to § 51(6) of the Adoption Code (MCL 710.22[f], 710.51[6]; MSA 27.3178[555.22][f], 27.3178[555.51][6]).

*Christopher Pencak*, for the petitioner.

*Lord & Guilliat* (by *Stephen M. Guilliat*), for the respondent.

Before: CAVANAGH, P.J., and REILLY and C. D. CORWIN*, JJ.

CAVANAGH, P.J. Respondent, Paul A. Sienkiewicz, Jr., appeals as of right a probate court order terminating

---

* Circuit judge, sitting on the Court of Appeals by assignment.

his parental rights to his daughter, Crystal L. Hill, pursuant to § 51(6) of the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6). We affirm.

Respondent and petitioner, Loree C. Hill, are the parents of Crystal Hill. Crystal was born on April 17, 1984, when respondent was seventeen years old and petitioner was sixteen years old. In 1995, petitioner married Terry Kaltz. On November 7, 1995, petitioner and Terry Kaltz filed a petition for a stepparent adoption, seeking authorization for Terry Kaltz to adopt Crystal. On the same day, petitioner filed a petition seeking termination of respondent's parental rights to Crystal pursuant to § 51(6) of the Adoption Code. A termination hearing was held on April 25, 1996.

At the hearing, petitioner testified that respondent attended prenatal classes with her, but then denied paternity after Crystal was born. However, a judgment of filiation was entered on October 7, 1985, naming respondent as the father of Crystal. On that same date, a judgment of support was entered. The support order provided that respondent was responsible for supporting Crystal, but stated that respondent's responsibility for support would be held in abeyance until petitioner again became a recipient of public assistance. Petitioner has not received public assistance since the support order was entered. The support order also required respondent to pay confinement expenses of $862.21 and blood-testing fees of $395. In addition, respondent was responsible "for all reasonable and necessary medical, hospital, dental, optical, and pharmaceutical expenses incurred on behalf of said child." Petitioner testified that respondent never paid the confinement and blood-testing fees as mandated by the support order, never paid for

any of Crystal's medical expenses, and has not contributed "a dime" toward Crystal's support.

Petitioner stated that respondent had seen Crystal approximately six times, with most of the visits occurring before the child's first birthday. According to petitioner, during those visits, respondent was focused on trying to renew their relationship, rather than on his daughter. Petitioner also testified that respondent threatened to kill her, to commit suicide, and to take Crystal away from her. Because petitioner was afraid of respondent, she refused to allow him to visit unless her mother was present. Respondent did not like this arrangement and ceased visitation, although he did see Crystal once in 1991. Crystal has never received any cards or gifts from respondent.

Crystal testified that she does not remember ever seeing respondent. In addition, she has never received any cards, gifts, or telephone calls from him, and she has no feelings of love and affection for him. Crystal wishes to be adopted by Terry Kaltz.

Paula Klimas, respondent's sister, testified that respondent visited Crystal frequently after the child was born. For several years after the relationship of petitioner and respondent ended, respondent was unable to see Crystal because he did not know where petitioner was. Respondent lived with Klimas for nine months beginning in June 1990, and he saw Crystal once during this period. Klimas claimed that respondent attempted to visit Crystal on numerous other occasions while he was living with her, but petitioner denied him permission.

Respondent testified that he lived with petitioner at her mother's house shortly after Crystal was born. Respondent paid rent and contributed toward the

bills during this time. Respondent claimed that petitioner's mother forced him to leave after he lost his job, but he continued to see Crystal on a continuous basis until 1985, when he was incarcerated for breaking and entering. After his release, respondent violated his probation and was resentenced to two to fifteen years' imprisonment. Respondent maintained that, while in prison, he sent cards and gifts to Crystal at petitioner's mother's house, but has never received any reply. After respondent was paroled in 1990, he was initially allowed to see Crystal, but then petitioner and her mother denied him visitation. Respondent conceded that he has never made any child support payments and stated that he did not pay the medical bills and blood-testing expenses required by the 1985 support order because he did not have the money.

Respondent admitted writing a letter to petitioner's mother, dated March 11, 1996, which contained the following passage:

> If she [petitioner] would Rather ignore this letter as she does all the others I have sent, then tell her I aint [sic] giving up nothing! Her man and herself can try some more sneaky underhand sh—, and get ready to pay extensive legal fees.

Respondent denied writing two other threatening letters, including one addressed to petitioner that carried the salutation, "Dear Bitch, I hate you!"

At the conclusion of the hearing, the probate court ordered the parties to file written closing arguments. The court granted respondent's request to submit Department of Corrections disbursement records documenting any gifts or letters sent from prison. The

only record that accompanied respondent's written closing argument was for a single disbursement from respondent to Crystal on March 2, 1996.

On May 22, 1996, the trial court issued a written opinion terminating respondent's parental rights pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6). The court found that clear and convincing evidence had been presented that respondent "has substantially failed in his obligations to Crystal Lee Hill for a period of two years prior to the filing of this petition." The court noted that the statute does not specifically provide that the two-year period must be the two years immediately preceding the filing of the petition and concluded that *any* two-year period preceding the filing of the petition would be sufficient. This appeal ensued.

I

A

Respondent first argues that the probate court erred in ruling that the two-year statutory period referred to in MCL 710.51(6); MSA 27.3178(555.51)(6) can mean any two-year period before the filing of the petition. The statute provides:

> If the parents of a child are divorced, or if the parents are unmarried but the father has acknowledged paternity or is a putative father who meets the conditions in section 39(2) of this chapter, and if the party having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:
>
> (a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a

support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed to or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6); MSA 27.3178(555.51)(6).]

Statutory interpretation is a question of law that, on appeal, is reviewed de novo for error. The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. Statutory language should be construed reasonably, keeping in mind the purpose of the act. Because the Adoption Code is in derogation of the common law, its provisions must be strictly construed. *In re Schnell*, 214 Mich App 304, 309-310; 543 NW2d 11 (1995).

This Court has recently held that the applicable two-year statutory period "commence[s] on the filing date of the petition and extend[s] backwards from that date for a period of two years or more." *In re Halbert*, 217 Mich App 607, 612; 552 NW2d 528 (1996). Thus, the probate court erred when it concluded that § 51(6) refers to any two-year period before the filing of the petition.

Petitioner contends that, notwithstanding *Halbert*, "principles of res judicata and stare decisis require that Judge Spillard's decision stand." Petitioner's reliance on these two doctrines is misplaced. The purpose of the doctrine of res judicata is to avoid relitigation of claims. Res judicata operates to bar a subsequent action between the same parties when the facts or evidence essential to maintenance of the two law-

suits are identical and the issues and parties or privies are identical. *Ozark v Kais,* 184 Mich App 302, 307-308; 457 NW2d 145 (1990). Because no subsequent lawsuit is involved in the present case, the doctrine of res judicata is not applicable.

Petitioner's stare decisis argument is predicated on the assertion that *Halbert* is contrary to this Court's prior decision in *In re Colon,* 144 Mich App 805; 377 NW2d 321 (1985). In *Colon,* which involved facts similar to those in the present case, this Court looked to the two-year period before the respondent's incarceration. However, the *Halbert* panel specifically discussed *Colon* and expressly concluded that it did not constitute meaningful authority for a contrary proposition. See *Halbert, supra* at 614. Moreover, even if the decisions in *Colon* and *Halbert* are contradictory, we are bound by Administrative Order No. 1996-4 to follow the interpretation set forth in *Halbert.*

Furthermore, the general rule in Michigan is that appellate court decisions are to be given full retroactivity unless limited retroactivity is justified. *Moorhouse v Ambassador Ins Co, Inc,* 147 Mich App 412, 420-421; 383 NW2d 219 (1985). A decision that interprets a preexisting statute should be given full retroactive effect, even though the interpretation presented may involve a question of first impression. Thus, we must give *Halbert* full retroactive effect, and its interpretation of MCL 710.51(6); MSA 27.3178(555.51)(6) is controlling in the present case.

Petitioner also contends that respondent does not have standing to oppose termination under MCL 710.51(6); MSA 27.3178(555.51)(6). Petitioner contends that respondent does not fall within the parameters of the statute because (1) he was never married

to petitioner, and hence never divorced from her; (2) he denied paternity after Crystal was born; and (3) he is not a putative father who meets the conditions in § 39(2).[1] We find petitioner's argument to be flawed, both factually and logically. First, although respondent did initially deny paternity, an order of filiation was entered on January 9, 1985, naming respondent as the father of Crystal. Second, it was petitioner who invoked § 51(6) as a statutory basis for terminating respondent's parental rights. Petitioner cannot attempt to have respondent's parental rights terminated under § 51(6) and at the same time argue that respondent does not have standing to oppose termination under the same section.

B

Having concluded that the probate court erred in its interpretation of § 51(6), we now address whether this error requires reversal of the order terminating respondent's parental rights. We conclude that it does not because the probate court's factual findings establish that the requirements of § 51(6)(a) and (b) were both met.

A petitioner in an adoption proceeding must prove by clear and convincing evidence that termination of parental rights is warranted. This Court reviews the

---

[1] Section 39(2) provides:

> If the putative father has established a custodial relationship with the child or has provided support or care for the mother during pregnancy or for either mother or child after the child's birth during the 90 days before notice of the hearing was served upon him, the rights of the putative father shall not be terminated except by proceedings in accordance with section 51(6) of this chapter or section 2 of chapter XIIA. [MCL 710.39(2); MSA 27.3178(555.39)(2).]

probate court's findings of fact under the clearly erroneous standard. A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made. *In re Simon*, 171 Mich App 443, 448-449; 431 NW2d 71 (1988).

In order to terminate parental rights under § 51(6), the requirements of subsections a and b must both be satisfied. In *Colon*, this Court held that subsection a addresses two different situations: (1) where a parent, when able to do so, fails or neglects to provide regular and substantial support, and (2) where a support order has been issued and the parent fails to substantially comply with it. A parent who seeks to terminate the parental rights of the other parent, against whom there is already a support order, need prove only a substantial failure to comply with the support order for two years before the filing of the petition. The petitioning parent is not additionally required to prove the other parent's ability to comply with the support order because the ability to pay has already been factored into the order. *Colon, supra* at 809-812.

As an initial matter, we reject respondent's reading of *Halbert*. Respondent interprets *Halbert* as precluding the admission or consideration of any evidence not relating to the two-year period immediately preceding the filing of the petition.[2] We find, however, that neither the language of § 51(6) nor *Halbert* supports such an interpretation. On the contrary, both § 51(6)(a) and (b) describe the relevant statutory

---

[2] Unlike this case, the probate court in *Halbert* rendered a finding that the statutory grounds for termination had not been established if the two-year period immediately preceding the filing of the petition were considered. *Halbert, supra* at 609-610.

period as "2 years *or more*" (emphasis added). Inclusion of the words "or more" indicates a legislative intent that circumstances beyond the applicable two-year statutory period may be considered. Furthermore, the question decided in *Halbert* was the commencement date for the statutory period, not whether events occurring outside the two-year period may be considered. Indeed, in construing § 51(6), the *Halbert* panel stated:

> A bare reading of the statute reveals that the two-year statutory period must commence on the filing date of the petition and extend backwards from that date for a period of two years *or more.* Accordingly, we determine that the statute is satisfied and a petition for termination may be granted where the grounds for termination have been shown to exist for *at least* two years immediately preceding the filing of the termination petition. [*Halbert, supra* at 612 (emphasis added).]

In the present case, a support order was entered on October 7, 1985. Therefore, it is only necessary to determine whether respondent had substantially complied with the support order for a period of two years or more before the filing of the petition. Respondent contends that the support order was not violated because it provides that he was not required to pay child support unless petitioner became a recipient of public assistance, and the evidence revealed that this did not occur after the order was entered. However, the order also states that respondent was required to pay confinement expenses of $862.21 and blood-testing fees of $395, as well as Crystal's medical, hospital, dental, optical, and pharmaceutical expenses. At the hearing, petitioner testified, and respondent conceded, that he never paid the confinement expenses

or the blood-testing fees and likewise had not paid for any of the child's medical expenses. Consistent with this testimony, the probate court found that respondent "never paid so much as one penny on the Support Order at any time." Thus, because it was established that a support order had been entered with which respondent had failed to substantially comply, the requirements of § 51(6)(a) were satisfied.

Under § 51(6)(b), petitioner was required to prove that respondent, "having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition." Respondent contends that, because of his incarceration, he did not have the ability to visit Crystal during the two-year period immediately preceding the filing of the petition, and therefore his parental rights cannot be terminated. However, the subsection encompasses the ability to "visit, contact, *or* communicate." The term "or" is generally construed as referring to an alternative or choice between two or more things. *Hoffman v Auto Club Ins Ass'n*, 211 Mich App 55, 69; 535 NW2d 529 (1995). Because the statute uses the word "or," petitioner was not required to prove that respondent had the ability to perform all three acts. Rather, petitioner merely had to prove that respondent had the ability to perform any one of the acts and substantially failed or neglected to do so for two or more years preceding the filing of the petition.

Respondent testified that he was able to send letters from prison and, in fact, claimed that he had regularly sent letters, cards, and gifts to Crystal. Thus, it was established that respondent had the ability to communicate with the child. The factual issue

whether respondent actually had communicated with Crystal was disputed. Although respondent testified that he sent letters, cards, and gifts to Crystal, both petitioner and Crystal herself testified that they had never received anything from respondent. The probate court resolved this factual dispute against respondent.

Respondent contends that the probate court clearly erred because disbursement authorization records from the Department of Corrections will verify that items were sent. However, contrary to respondent's assertion in his appellate brief, he was not precluded from producing such records, even after the hearing.[3] Despite being given the opportunity to provide such records, respondent produced only a single record that something was sent to Crystal on March 2, 1996. This lone instance does not meet the requirement of regular and substantial communication within the meaning of § 51(6)(b). Thus, the probate court's findings establish that the requirements of subsection b were satisfied.

---

[3] The transcript of the hearing includes the following passage:

[*Respondent's attorney*]: Your Honor, would the Court like me to, since there was testimony as to these receipts and of letters and gifts being sent—I believe I can obtain that from the Department of Corrections if I request those.

[*Petitioner's attorney*]: I would object. They had their opportunity in the hearings, he rested.

[*Respondent's attorney*]: Your Honor, I'm just asking. If we're going to cross-examine as to why they wouldn't let him bring them, if the Court wants them I'll get them, if it doesn't I won't. I'm just asking the Court if they'd [sic] like to see them?

*The Court:* You bring them and also I want someone to run a lien on him. You get his social security number, officer, and anything—want to run a lien on him as to [whether] what he said on the stand was or was not true, I don't know. I'd like to verify that.

In sum, although the probate court erred in construing § 51(6) as not requiring consideration of the two-year period immediately preceding the filing of the petition, because its factual findings establish that the requirements of subsections a and b were both met, the error was harmless.

II

Respondent next argues that the probate court erred in considering evidence relating to the best interests of the child. Respondent contends that the plain language of MCL 710.51(6); MSA 27.3178(551)(6) does not allow the court to consider the best interests of the child.

A probate court's decision to admit evidence at a termination hearing is reviewed for an abuse of discretion. *In re Vasquez*, 199 Mich App 44, 50-51; 501 NW2d 231 (1993). We find no abuse of discretion. Section 51(6) states that the probate court *may* issue an order terminating the rights of the parent if the requirements of subsections a and b are both met. Thus, the statute is permissive and not mandatory. *Colon, supra* at 812. Because the probate court has discretion, it was not error for it to consider the best interests of the child. Moreover, because the Legislature set forth in the Adoption Code the criteria to be evaluated in determining the best interests of the adoptee, see MCL 710.22(f); MSA 27.3178(555.22)(f), we think it unlikely that the probate court is prohibited from considering such evidence when ruling on a petition filed pursuant to § 51(6).

III

In his final issue, respondent contests several of the probate court's factual findings. First, respondent contends that the probate court clearly erred in finding that he has sent petitioner a letter that began, "Dear Bitch, I hate you!" Respondent argues that he denied writing the letter and, consequently, it was never admitted into evidence. However, we find the error, if any, to be harmless because the letter was not material to any of the relevant statutory factors under § 51(6).

Respondent next argues that the probate court clearly erred in finding that respondent's sole interest was in causing petitioner grief and the incurrence of extensive legal expenses. However, given the contents of the letter respondent admitted writing to petitioner's mother, we do not find the probate court's conclusion to be clearly erroneous.

Respondent also asserts that the probate court clearly erred in finding that he did not visit Crystal during a twenty-one-month period commencing in 1990. Respondent claims that this finding is clearly erroneous because he testified that he did visit Crystal during this period. Because both petitioner and Paula Klimas testified that respondent saw Crystal once in 1991, we conclude that the probate court did err. However, because this factual dispute concerns a single visit, which is insufficient to establish regular and substantial visitation, we find the error to be harmless.

Next, respondent argues that the probate court's finding that respondent's visits were not for the purpose of seeing Crystal, but rather were attempts to obtain sex from petitioner, is clearly erroneous

because it is based on testimony that was ruled inadmissible. After reviewing the transcript, we conclude that respondent is incorrect. Although respondent's objection to an initial question regarding this subject was sustained, the following colloquy then occurred without objection:

> *Q.* All right. Did Mr. Sienkiewicz actually spend time with the infant or did he spend the visitation time with you?
> *A.* With me.
>
> \*     \*     \*
>
> *Q.* Did he ask you [for] or demand anything?
> *A.* Yes, he did.
> *Q.* What did he demand?
> *A.* He was trying to fix our relationship and he was trying to have me engage in sex with him and things like that. He was not there to see my daughter, he was using her to try to get to me.

In light of this testimony, we cannot conclude that the probate court clearly erred in finding that respondent's visits to Crystal were merely excuses to obtain sex from petitioner.

Finally, respondent challenges the probate court's finding that petitioner broke off her relationship with respondent because of the threats and violence. However, at the hearing, petitioner testified that respondent threatened to kill her and then commit suicide afterwards, that he threatened to take Crystal away, that on one occasion her attempt to get him to leave resulted in a physical altercation, and that he once struck her on the head with a bottle. In view of this testimony, the probate court's finding is not clearly erroneous.

Affirmed.