# SPECIAL ORDERS

*Order Entered August 22, 1997:*

*In re* CALDWELL, Docket No. 197219. The Court orders that a special panel shall be convened pursuant to Administrative Order No. 1996-4 to resolve the conflict between this case and *In re Halbert,* 217 Mich App 607 (1996).

Docket No. 197219. Released August 8, 1997, at 9:00 A.M.; vacated August 22, 1997.

Before: YOUNG, P.J., and DOCTOROFF and CAVANAGH, JJ.

PER CURIAM. Petitioner Harry C. Russell sought to legally adopt his stepchild under the Adoption Code, MCL 710.21 *et seq.*; MSA 27.3178(555.21) *et seq.* Respondent Erik M. Caldwell, the natural father, appeals as of right from the probate court's order terminating his parental rights pursuant to MCL 710.51(6); MSA 27.3178(555.51)(6).

On May 3, 1990, a child was born to petitioner Kaetlyn E. Russell (formerly known as Shelly Ann Caldwell) and respondent, who were married at the time. The parents were divorced in 1994 while respondent was in prison. Respondent's ex-wife married petitioner, who then sought to legally adopt the child. Throughout this case, respondent remained incarcerated, failed to pay child support, and had little or no contact with his child.

We must begin our analysis with an issue that was not fully briefed by the parties. A panel of this Court recently held that an incarcerated parent's rights cannot be terminated under § 51(6) of the Adoption Code, MCL 710.51(6); MSA 27.3178(555.51)(6), because the Legislature did not intend to apply this provision against an incarcerated parent who lacks the ability to support or visit the child. *In re Halbert,* 217 Mich App 607; 552 NW2d 528 (1996).

Before *Halbert,* a dispute arose concerning the interpretation of MCL 710.51(6); MSA 27.3178(555.51)(6). In essence, the statute provides that a noncustodial parent's rights can be terminated upon remarriage of the custodial parent if the noncustodial parent had failed to provide support or visitation for two or more years.[1] Before *Halbert,* the courts looked to

---

[1] The statute provides:

the two-year period immediately preceding the filing of the petition to terminate parental rights. However, in some instances in which the father was imprisoned, the courts looked to the two-year period immediately preceding the parent's incarceration. See *In re Colon,* 144 Mich App 805, 812, 814; 377 NW2d 321 (1985). However, the *Halbert* Court noted that the phrase "for a period of 2 years or more before filing the petition" was "plain, certain, and unambiguous." *Halbert, supra* at 612. Accordingly, this Court found that the probate court in that case had erred in looking to the two-year period immediately preceding the incarceration. *Id.* at 612, 614. We are in agreement with this portion of *Halbert.*

However, the *Halbert* panel went on to state:

> The primary purpose of MCL 710.51(6); MSA 27.3178(555.51)(6) is to allow a stepparent who provides the material and emotional support to a child that would be expected of the child's legal parent to adopt the child of a noncustodial parent who has essentially abandoned the child and who has refused to, or is unavailable to, consent to the adoption. *In re Colon, supra,* pp 810-811. This purpose may be effectuated only where the noncustodial parent is situated in circumstances whereby that parent can earn a living and acquire the wherewithal to support a child, where the noncustodial parent has ignored or abandoned the natural obligations owed a child by a parent, and where the noncustodial parent has refused, or intentionally has become unavailable, to consent to the adoption. Respondent's lengthy incarceration before the filing of the petitions for termination of his parental rights and for adoption—and, hence, his inability to earn a living and acquire the wherewithal to provide support for [the child]—take respondent outside the intended scope of MCL 710.51(6); MSA 27.3178(555.51)(6). [*Id.* at 615-616.]

Although we are constrained by Administrative Order No. 1996-4 to follow the *Halbert* decision, we disagree with that panel's conclusion that an

---

If the parents of a child are divorced . . . and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

incarcerated parent falls outside the scope of MCL 710.51(6); MSA 27.3178(555.51)(6).

As specifically noted in *Halbert*, "[w]here the language employed in a statute is plain, certain, and unambiguous, the statute must be applied as written without interpretation." *Id.* at 612. We believe that the statutory language is clear and that there is no "incarcerated parent" exception to the application of the statute. Accordingly, we would find that the statute applies to respondent.

In addition, we do not agree with the factual basis for the *Halbert* panel's conclusion. The panel assumed that an incarcerated parent lacked the ability to comply with the statute's support and visitation requirements. However, testimony of the respondent in this case contradicts this assumption. Respondent testified that he earned $150 a month in a prison apprenticeship. Although respondent maintained that he was not allowed to send money out of the prison, he also testified that he was aware of other prisoners with support obligations who were able to arrange for the prison to honor income-withholding orders. Because respondent's support obligation was $10 a week, the evidence suggested that he was able to comply with the support requirement of the statute. In addition, we find that the *Halbert* panel failed to recognize that an imprisoned father could support a child through outside accounts established before the incarceration.

We also believe that an incarcerated parent is not necessarily prevented from complying with the "contact" provision of the statute. To avoid termination of parental rights, the act requires a parent to "visit, contact, or communicate with the child." Thus, although a prisoner lacks the ability to physically visit with outsiders, he is not restricted from communicating with the outside world by other means. For example, respondent in this case indicated that he had spoken to his son on the telephone,[2] and he admitted that he was free to write letters. Accordingly, we find that an incarcerated parent could comply with the "contact" provision of MCL 710.51(6)(b); MSA 27.3178(555.51)(6)(b).

As set forth above, we do not agree with the conclusion of the *Halbert* panel that an incarcerated father falls outside the scope of MCL 710.51(6); MSA 27.3178(555.51)(6). Were it not for *Halbert*, we would find that the statute is applicable to an individual in prison. However, because we are constrained to follow *Halbert*, we must reverse the probate court's ruling that terminated respondent's parental rights pursuant to the statute.

Respondent's remaining issues also involve interpretation of MCL 710.51(6); MSA 27.3178(555.51)(6). Because we reverse on the basis that respondent does not fall under the statute, we would not normally address these issues. However, we reverse only because we are constrained to follow *Halbert* under Administrative Order No. 1996-4. Accord-

---

[2] Respondent stated that he was only able to speak to his son on the telephone on one occasion because respondent was not given the telephone number for where his son resided.

ingly, we will set forth the remaining issues as we would have decided them, were we not constrained to reverse.

Respondent contends that the probate court erred in refusing to allow him to present evidence regarding the best interests of the child. In *In re Hill*, 221 Mich App 683; 562 NW2d 254 (1997), this Court held that a probate court did not abuse its discretion by permitting the father to introduce evidence of the best interests of the child during a termination hearing under MCL 710.51(6); MSA 27.3178(555.51)(6). *Id.* at 696. This Court stated:

> Section 51(6) states that the probate court *may* issue an order terminating the rights of the parent if the requirements of subsections a and b are both met. Thus, the statute is permissive and not mandatory. *Colon, supra* at 812. Because the probate court has discretion, it was not error for it to consider the best interests of the child. Moreover, because the Legislature set forth in the Adoption Code the criteria to be evaluated in determining the best interests of the adoptee, see MCL 710.22(f); MSA 27.3178(555.22)(f), we think it unlikely that the probate court is prohibited from considering such evidence when ruling on a petition filed pursuant to § 51(6). [Emphasis in original.]

Thus, pursuant to *Hill*, the probate court had the discretion to allow evidence regarding the best interests of the child in this case. However, it appears that the probate court was not aware that it possessed such discretion. The following exchange occurred in the probate court:

> [*Petitioner's Attorney*]: Your Honor, at this point, let me, if I may, get a little guidance into how you would like to proceed. I finished my questions with regard to the two-prong test under the statute. Should I launch into my questions regarding the best interests or would you rather have that reserved?
>
> [*The Court*]: Well, again, *my interpretation of the statute is that those issues are not called for to be addressed* in regard to the portion of the statute that addresses the termination.
>
> \*   \*   \*
>
> [*Respondent's Attorney*]: Your Honor, I believe as to the best interest factor, it is relevant.
>
> [*The Court*]: Well, I've already indicated that that's not part of my interpretation of what this hearing is about.
>
> [*Respondent's Attorney*]: Your Honor, I would, then, like to make an offer of proof so that I have my record preserved in the event of an appeal about the best interest factor and some testimony from Mrs. Caldwell along that line, if I may.
>
> [*The Court*]: I don't think so. I think, if you want to appeal that, you certainly may. And they may send it back, and we may have to retry this whole thing, but my—I don't see the basis for an offer of proof. [Emphasis added.]

When a court does not fully recognize the discretion it possesses, the case may be remanded for further consideration so the court may properly exercise the full extent of its discretion. *In re Rankin*, 433 Mich 592, 604-605; 447 NW2d 741 (1989); *Lorenz v Lorenz*, 166 Mich App 58, 62; 419 NW2d 770 (1988). In this case, in refusing to admit the evidence of the child's best interests, it is clear that the probate court was not merely exercising its discretion, but failed to recognize that it had the discretion to admit such evidence. In a case such as this, it would seem that such evidence would be relevant to the court's decision to terminate respondent's parental rights. However, we again note that the decision to admit such evidence is within the probate court's discretion. *Hill, supra.*

Because the probate court in this case failed to recognize its discretion under the statute to admit evidence of the child's best interests, remand would normally be proper. However, because we are constrained by *Halbert* to find that respondent, as an incarcerated parent, does not fall under MCL 710.51(6); MSA 27.3178(555.51)(6), remand pursuant to our findings on this issue is not applicable.

Next, respondent contends that the probate court erred in concluding that respondent had the ability to comply with the "contact" provision of MCL 710.51(6); MSA 27.3178(555.51)(6), yet failed to do so. We disagree.

The statute states that a petitioner must show that the parent, "having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition." In this case, respondent admitted that he was able to make telephone calls and write letters to the outside world. Although he testified that he was not given a telephone number by which he could reach his son, he was not prevented from corresponding by mail. Yet, respondent failed to write any letters to his son. Respondent contends that he had contact with his son through his parents when the child visited them. However, even if these grandparent contacts were "on behalf" of respondent, they were infrequent and insufficient to satisfy the statute. See *In re Simon*, 171 Mich App 443, 449; 431 NW2d 71 (1988); *In re Martyn*, 161 Mich App 474, 482; 411 NW2d 743 (1987). Accordingly, we agree with the probate court that respondent failed to satisfy the "contact" provision of MCL 710.51(6)(b); MSA 27.3178(555.51)(6)(b).

Finally, respondent contends that the probate court erred in finding that respondent failed to comply with the support provision of MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a). The statute requires proof that the parent has "substantially failed to comply" with a support order. In this case, the original support order required respondent to pay $20 a week. Following respondent's incarceration, this figure was reduced to $10 a week. Although respondent earned $150 a month in prison, he made no attempt to apply these funds toward the support of his child. Accordingly, we find that the probate court did not err in finding that respondent had the ability to comply with the support order but failed to do so.

Reversed pursuant to Administrative Order No. 1996-4. Respondent, being the prevailing party, may tax costs pursuant to MCR 7.219.