*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. S. ALEXANDER, Minor.

FOR PUBLICATION
June 03, 2025
10:46 AM

Nos. 369324; 369325
Wayne Circuit Court
Family Division
LC No. 2004-433556-NA

Before: MARIANI, P.J., and RIORDAN and FEENEY, JJ.

RIORDAN, J.

In these consolidated appeals,[1] respondents appeal as of right the trial court's order terminating their parental rights to CSA under MCL 712A.19b(3)(f) (abandonment). We affirm in part, reverse in part, and remand to the trial court for further proceedings.

## I. FACTUAL BACKGROUND

Petitioners were appointed as the legal guardians of CSA on July 31, 2019.[2] In September 2022, petitioners filed a permanent custody petition requesting that the trial court assume jurisdiction over CSA pursuant to MCL 712A.2(b)(6)(A) (the parent, having the ability to support the child, has failed or neglected, without good cause, to provide regular and substantial support

---

[1] On January 17, 2024, this Court entered an order consolidating these two appeals. *In re C S Alexander*, unpublished order of the Court of Appeals, entered January 17, 2024 (Docket Nos. 369324 & 369325).

[2] We note that there are discrepancies in the lower court record as to when petitioners' guardianship of CSA was originally established, presumably because multiple orders of guardianship were entered due to issues surrounding the identity of CSA's true father. However, as the referee took judicial notice of the record arising out of the accompanying probate-court proceedings, and she determined that petitioners' guardianship was first established on July 31, 2019, that is the date we have cited.

-1-

for the child for two years or more before the filing of the petition), and (B) (the parent, having ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected, without good cause, to do so for two years or more before the filing of the petition),[3] and enter an order terminating the parental rights of respondent-mother and respondent-mother's husband[4] to CSA under MCL 712A.19b(3)(f). Petitioners presumably listed respondent-mother's husband as the minor child's legal father, as opposed to respondent-father, due to their marital relationship, and because respondent-mother's husband was listed as the father on CSA's birth certificate.

When petitioners filed the aforementioned petition, it appears that petitioners were unaware that in February 2022, the Wayne Probate Court entered an order revoking the paternity of respondent-mother's husband regarding four of respondent-mother's children, including CSA, and vacated all orders of filiation, child support, and other related items, because DNA testing results revealed that respondent-mother's husband was not the biological father of the four cited children.[5] Accordingly, in February 2023, the trial court entered an order dismissing petitioners' September 2022 permanent custody petition because respondent-mother's husband was improperly listed as CSA's father, and "Mother has identified a man as the biological father of [CSA], but no notice has been submitted to him by this court or the Probate Court[,]" referring to respondent-father. The trial court further ordered petitioners to return to the probate court to "seek a new consent order and give notice to biological father of the same."

On April 19, 2023, the probate court entered an order for authority to adopt and granted petitioners the authority to file a petition for the adoption of CSA. On May 15, 2023, petitioners filed a permanent custody petition requesting that the trial court assume jurisdiction over CSA pursuant to MCL 712A.2(b)(6)(A) and (B),[6] and enter an order terminating respondents' parental rights to CSA under MCL 712A.19b(3)(f). The petition detailed that a guardianship order placing CSA in petitioners' custody was entered on February 2, 2023,[7] and the petition further identified respondents as the parents of CSA. On May 18, 2023, the trial court authorized the petition. On

---

[3] The petition erroneously cites MCL 712A.2(b)(5) as the statutory ground for jurisdiction, but the featured language is from MCL 712A.2(b)(6).

[4] It is unclear whether respondent-mother and her husband remained married at the initiation of the underlying child protective proceedings, considering the subsequent events detailed below.

[5] Before that February 2022 order, respondent-mother's husband, not respondent-father, had the legal obligation with respect to CSA.

[6] Again, the petition erroneously cites MCL 712A.2(b)(5) as the statutory ground for jurisdiction, but the featured language is from MCL 712A.2(b)(6).

[7] We presume novel letters of guardianships were required after respondent-mother identified respondent-father as the putative father of CSA, and respondent-mother's husband revoked his paternity of the minor child.

July 21, 2023, an affidavit of parentage identifying respondent-father as the legal father of CSA was filed.[8]

Following evidentiary hearings addressing adjudication, the statutory ground, and best interests, the referee determined that (1) CSA was within the court's jurisdiction under MCL 712A.2(b)(6)(A) and (B), (2) a statutory ground for termination was established pursuant to MCL 712A.19b(3)(f), and (3) it was in CSA's best interests to terminate respondents' parental rights. Addressing MCL 712A.19b(3)(f)(*i*), the referee opined that respondents failed or neglected to provide regular and substantial support for CSA for a period of two years or more before the filing of the petition. Addressing MCL 712A.19b(3)(f)(*ii*), the referee opined that respondents, having the ability to visit, contact, or communicate with CSA, regularly and substantially failed or neglected, without good cause, to do so for a period of two years or more before the filing of the petition. Lastly, the referee found that it was in CSA's best interests to terminate respondents' parental rights because he was thriving under petitioners' care and custody, he had all of his needs met, and he stated that he wanted to be adopted by petitioners. On November 21, 2023, the trial court entered an order terminating respondents' parental rights. This appeal ensued.

## II. STATUTORY GROUND

Respondents argue that the trial court clearly erred when it determined that there was a statutory ground to terminate their parental rights under MCL 712A.19b(3)(f). We agree as to respondent-father, but disagree as to respondent-mother.

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews for clear error a trial court's factual findings and ultimate determinations on the statutory grounds for termination. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

The termination of parental rights is proper under MCL 712A.19b(3)(f) if:

The child has a guardian under the estates and protected individuals code [(EPIC), MCL 700.1101 *et seq*.], and both of the following have occurred:

(*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition

---

[8] We note that while respondent-father testified during the evidentiary hearings that he established paternity in September 2023, respondent-father's counsel previously stated that the affidavit of parentage was filed on July 21, 2023, per the central paternity register.

or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

In child protective proceedings, the term "parent" is defined by MCR 3.903(A)(18). MCR 3.903(A)(18) provides, " 'Parent' means the mother, the father as defined in MCR 3.903(A)(7), or both, of the minor. It also includes the term 'parent' as defined in MCR 3.002(20)."[9] MCR 3.903(A)(7) defines "father" as follows:

(a) A man married to the mother at any time from a minor's conception to the minor's birth, unless a court has determined, after notice and a hearing, that the minor was conceived or born during the marriage, but is not the issue of the marriage;

(b) A man who legally adopts the minor;

(c) A man who by order of filiation or by judgment of paternity is judicially determined to be the father of the minor;

(d) A man judicially determined to have parental rights; or

(e) A man whose paternity is established by the completion and filing of an acknowledgment of parentage in accordance with the provisions of the Acknowledgment of Parentage Act, MCL 722.1001 *et seq*., or a previously applicable procedure. For an acknowledgment under the Acknowledgment of Parentage Act, the man and mother must each sign the acknowledgment of parentage before a notary public appointed in this state. The acknowledgment shall be filed at either the time of birth or another time during the child's lifetime with the state registrar.

Under the aforementioned definition, "a putative father does not qualify as a father or parent for the purpose of exercising jurisdiction in child protective proceedings." *In re Long*, 326 Mich App 455, 464; 927 NW2d 724 (2018).

In the instant matter, it is undisputed that petitioners were CSA's guardians pursuant to the EPIC. However, when petitioners filed the subject petition requesting that the trial court assume jurisdiction over CSA pursuant to MCL 712A.2(b)(6)(A) and (B) and enter an order terminating respondents' parental rights to CSA under MCL 712A.19b(3)(f), respondent-father solely was CSA's putative father, as an affidavit of parentage had yet to be filed.

---

[9] MCR 3.002(20) pertains to the parents of Indian children and is not applicable to the facts of this case.

In *In re Long*, this Court examined whether a trial court may properly exercise jurisdiction over a respondent-father under MCL 712A.2(b)(6), when the respondent-father was not determined to be the child's legal father until after the petition was originally filed. *In re Long*, 326 Mich App at 464-465. This Court determined that because a trial court must consider the child's circumstances at the time the petition was filed, "respondent-father's status as a putative father on the date the petition was filed means that he does not qualify as a 'parent' under MCL 712A.2(b)(6). Therefore, respondent-father's actions in the two years or more preceding the filing of the petition are immaterial." *Id.* at 464. This Court further opined that while the respondent-father believed that he could be the child's father and therefore should have diligently perfected paternity, as a putative father, he had no legal rights or obligations to the child before establishing his paternity. *Id.* This Court concluded "that to rely on a putative father's action or inaction in the two years or more preceding the filing of a petition when considering whether to exercise jurisdiction under MCL 712A.2(b)(6) is violative of due process." *Id.* at 464-465. This Court accordingly vacated the order terminating the respondent-father's parental rights. *Id.* at 465-466.

But, in *In re Knipp*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368780); slip op at 4-6, this Court appeared to reach a contrary conclusion regarding when a trial court is permitted to examine a putative father's conduct. In that case, this Court addressed whether the trial court erred when it considered the respondent-father's conduct after he was ordered to determine paternity, but before a judicial determination of paternity was made, in resolving whether 91 days had elapsed as required by MCL 712A.19b(3)(a)(*ii*).[10] *Id.* at 4. This Court concluded that "[t]he plain language of MCL 712A.19b(3)(a)(*ii*) does not require that the requisite 91-day period of abandonment occur after a judicial determination of paternity has been made." *Id.* This Court noted that "in the context of determining whether the statutory ground found in MCL 712A.19b(3)(g) has been proven, this Court [previously] has stated that the actions of a putative father occurring before he perfects paternity may be considered for purposes of terminating parental rights."[11] *Id.* (quotation marks and citation omitted). This Court advanced that the aforementioned reasoning was equally applicable to matters involving termination under MCL 712A.19b(3)(a)(*ii*), and it concluded that "the trial court did not err by considering [respondent-father's] conduct after being ordered to determine paternity, but before a judicial determination of paternity was made, in determining whether 91 days had elapsed as required by MCL 712A.19b(3)(a)(*ii*)." *Id.* at 5.

Here, considering the holdings in both *In re Long* and *In re Knipp*, we conclude that because respondent-father only was the putative father when the subject petition was filed in May 2023, and he did not establish his paternity to CSA until approximately two months afterwards, the trial court erred when it terminated his parental rights under MCL 712A.19b(3)(f) because it improperly exercised its jurisdiction over CSA with respect to respondent-father before his

---

[10] Termination is permitted under MCL 712A.19b(3)(a)(*ii*) when "[t]he child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period."

[11] Termination is permitted under MCL 712A.19b(3)(g) if "[t]he parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."

parentage was recognized legally. See *In re Long*, 326 Mich App at 465. See also *Ryan v Ryan*, 260 Mich App 315, 343; 677 NW2d 899 (2004) ("Because the trial court never properly assumed jurisdiction, all orders based on the wrongful assumption of jurisdiction are void ab initio."). While *In re Knipp* states, in the course of evaluating MCL 712A.19b(3)(a)(*ii*), that "the actions of a putative father occurring before he perfects paternity may be considered for purposes of terminating parental rights," *In re Knipp*, ___ Mich App at ___; slip op at 4 (quotation marks and citation omitted), that case did not address the threshold issue of jurisdiction. In other words, while *In re Knipp* recognizes a circumstance under which certain conduct of a putative father may be considered for the purposes of statutory grounds for termination, it does not stand for the proposition that the conduct of a putative father may be considered for the purposes of jurisdiction. Rather, *In re Long* controls this question and, as explained, it holds that such conduct may not be considered for the purposes of jurisdiction.[12] Indeed, respondent-mother's husband remained the legal father of CSA until the probate court entered an order revoking his paternity in February 2022. Thus, respondent-mother's husband, not respondent-father, had a legal obligation to CSA until that time. Accordingly, we conclude that the trial court erred by exercising its jurisdiction over CSA with respect to respondent-father, and we reverse the trial court to that extent.[13]

Regarding respondent-mother, however, the trial court did not clearly err by finding that clear and convincing evidence supported termination of her parental rights under MCL 712A.19b(3)(f). As previously detailed, to find that subsection (3)(f)(*i*) has been met, the trial court must find by clear and convincing evidence either that (1) the respondent failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of two years or more before the filing of the petition; or (2) if a support order has been entered, that the respondent has failed to substantially comply with the order for a period of two years or more before the filing of the petition. In this case, the record demonstrates that respondent-mother did not provide regular and substantial support for CSA between May 2021 and May 2023. While respondent-mother blamed petitioners for denying her attempts to offer financial assistance for CSA, respondent-mother was cognizant of petitioners' address, yet, as the referee opined, "[she] admit[s] quite readily that [she] never sent a check, a money order, a Venmo, a Pay Pal, gone to the Friend of the Court, sent a Draft Order, a Savings Bond to [petitioners] to take care of [her]

---

[12] We note that there is some tension between *In re Long* and *In re Knipp* because the former case held that the conduct of a putative father may not be considered for the purposes of establishing jurisdiction, while the latter case held that certain such conduct may be considered for the purposes of establishing a statutory ground for termination. As discussed, however, jurisdiction was not challenged in *In re Knipp*, and that decision must be read with *In re Long*'s prior and binding determination in mind. It also must be read in light of the principles of due process that undergird child protective proceedings, and as recognized in *In re Long*, due process requires a specific determination of a parent's unfitness at the adjudication stage. See *In re Sanders*, 495 Mich 394, 422; 852 NW2d 524 (2014).

[13] We recognize that respondent-father does not fully raise the issue of jurisdiction on appeal. However, given the particular circumstances of this case, we conclude that he sufficiently has argued the facts to place this issue before us.

son." Furthermore, the maternal grandfather testified that respondent-mother did not offer any supplies, birthday cards, gifts, clothing, or other items for CSA's benefit.

Simply put, as the trial court correctly found, respondent-mother was employed and capable of providing support for CSA while CSA was under petitioners' care, yet she did not do so. Therefore, the trial court did not clearly err by finding that MCL 712A.19b(3)(f)(*i*) was proven by clear and convincing evidence as to respondent-mother.

MCL 712A.19b(3)(f)(*ii*) considers whether the respondent maintained a relationship with the child by visiting, contacting, or otherwise communicating, if the respondent had the ability to do so. As the statute phrases "visit, contact, or communicate" in the disjunctive, petitioners were not obligated to establish that respondent-mother had the ability to perform all three acts, but rather, that she had the ability to perform at least one of the acts and regularly and substantially failed or neglected to do so, without good cause, for two or more years preceding the filing of the petition. See *In re Hill*, 221 Mich App 683, 694; 562 NW2d 254 (1997) (interpreting virtually identical language in MCL 710.51(6)(b)). Between May 2021 and May 2023, respondent-mother only visited petitioners' residence approximately five times, and she attributed her subsequent lack of interaction with CSA to petitioners' conduct. As the referee noted, however, despite claiming she was wholly stymied by petitioners' purported attempts to hinder the relationship between respondent-mother and CSA, respondent-mother did not pursue legal action to ensure her parental rights were respected. Furthermore, as the referee noted, those few dates on which respondent-mother sought to spend time with CSA between May 2021 and May 2023 only were times that were "convenient for [her]." In a nutshell, the record shows little effort by respondent-mother to maintain a relationship or interact with CSA. Consequently, the trial court did not clearly err by determining that MCL 712A.19b(3)(f)(*ii*) had been satisfied, and that termination of respondent-mother's parental rights was warranted under MCL 712A.19b(3)(f).

## III. BEST INTERESTS

Respondents argue that the trial court clearly erred when it determined that termination of respondents' parental rights was in the best interests of CSA under MCL 712A.19b(5).[14] For the jurisdictional reasons previously explained, we agree the trial court committed error as to respondent-father, but conclude it ruled correctly as to respondent-mother.

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children."

---

[14] We note that respondents failed to include the best-interests issue in their respective statement of the questions presented sections of their appellate briefs. See *Maple BPA*, *Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief and fails to provide authority to support its assertions."). However, as respondents adequately contested the best-interests determination in the argument sections of their respective appellate briefs, we opt to address the issue.

*In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015).  This Court reviews a trial court's best-interests determination for clear error.  *In re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses."  *In re BZ*, 264 Mich App at 296-297.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made."  MCL 712A.19b(5).  In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.  Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan.  [*In re Atchley*, 341 Mich App 332, 346-347; 990 NW2d 685 (2022) (quotation marks and citation omitted).]

Furthermore, "[a] child's placement with relatives is a factor that the trial court is required to consider."  *In re Gonzales/Martinez*, 310 Mich App at 434.  While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests."  *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012).

As previously detailed, because the trial court was not permitted to exercise jurisdiction over CSA with respect to respondent-father, the court was barred further from determining that it was in the best interests of CSA to terminate respondent-father's parental rights.  See *Ryan*, 260 Mich App at 343.  Conversely, we conclude that the trial court did not clearly err when it determined that termination of respondent-mother's parental rights was in the best interests of CSA under MCL 712A.19b(5).

The record shows that CSA had continually been under petitioners' care between May 2021 and May 2023, and petitioners solely were responsible for providing care, comfort, parental necessities, and support to CSA.  The referee noted that the lawyer-guardian ad litem reports reflect that CSA, who was 10 years old at the time of termination, desired to remain under petitioners' custody, and he was in favor of adoption.  Furthermore, the referee expressly recognized that CSA was in a relative placement and that CSA's guardians were his maternal grandparents, who were pursuing his adoption.  While the aforementioned factor weighs against termination, respondent-mother advanced minimal effort to be involved in CSA's life as she did not financially support CSA, and she did not regularly communicate with CSA.  As such, the record supports the conclusion that continued reunification efforts, at this point in time, are outweighed by CSA's need for stability, permanency, and finality, and respondent-mother has failed to show otherwise.  See *In re Moss*, 301 Mich App at 89 (stating that "at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has").  Therefore, the trial court did not

clearly err by finding that termination of respondent-mother's parental rights was in the best interests of CSA.

## IV. CONCLUSION

We affirm the termination of respondent-mother's parental rights. However, because the trial court improperly exercised jurisdiction over CSA with respect to respondent-father, we reverse the termination of respondent-father's parental rights, and remand to that court for further proceedings consistent with our opinion as to him.[15] We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Philip P. Mariani
/s/ Kathleen A. Feeney

---

[15] This opinion does not foreclose the trial court, upon remand, from exercising jurisdiction over respondent-father.