## *In re* KAISER

Docket No. 194120. Submitted March 4, 1997, at Lansing. Decided April 4, 1997, at 9:35 A.M.

Garrett W. Kaiser, Sr., and Linda A. Kaiser petitioned the Hillsdale County Probate Court for the termination of the parental rights of Gwendolyn R. Esswein to Garrett W. Kaiser, Jr., and Sabrina R. Kaiser pursuant to MCL 710.51(6)(a),(b); MSA 27.3178(555.51)(6)(a),(b) to allow the children's adoption by Linda Kaiser. The children had issued from the marriage of Garrett W. Kaiser, Sr., and Esswein, who divorced in the Jackson Circuit Court, which granted custody of the children to Garrett W. Kaiser, Sr., who then married Linda Kaiser. The probate court, Albert J. Neukom, J., terminated Esswein's parental rights. Esswein appealed.

The Court of Appeals *held*:

1. The probate court did not clearly err in finding that, for two years or more before the filing of the petition, Esswein had failed to substantially comply with a Jackson Circuit Court order that she pay support for the children and, when not subject to the support order, had failed to provide regular and substantial support for the children while having the ability to do so. MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a).

2. The probate court clearly erred in finding that Esswein, for two years or more before the filing of the petition, had the ability to visit, contact, or communicate with the children and had regularly and substantially failed or neglected to do so. MCL 710.51(6)(b); MSA 27.3178(555.51)(6)(b). The probate court record discloses that Esswein was under order by the Jackson Circuit Court not to visit the children until that court received a report from a therapist or counselor favoring reinstatement of visitation and that Esswein made a good-faith effort to undergo counseling. However, the probate court record is unclear with respect to whether the circuit court ever received a favorable report from the counselor such that Esswein could resume visiting her children. Thus, there is no support for the probate court's finding that Esswein had the ability to maintain contact with the children but failed to do so.

Reversed.

*Jerrold Schrotenboer,* for the petitioners.

*Lynch, Gallagher, Lynch & Martineau* (by *Richard J. Garcia*), for the respondent.

Before: FITZGERALD, P.J., and MACKENZIE and TAYLOR, JJ.

MACKENZIE, J. Respondent Gwendolyn R. Esswein appeals as of right from orders terminating her parental rights under MCL 710.51(6); MSA 27.3178 (555.51)(6). We reverse.

Petitioner Garrett Kaiser and respondent were married in 1983 and had two children, Sabrina, born on March 7, 1984, and Garrett, born on February 17, 1985. They were divorced in Jackson County in 1989. Petitioner was awarded physical custody of the children and respondent was awarded visitation. Petitioner remarried in 1990 and at some point apparently moved to Hillsdale County. On August 17, 1995, petitioner and his new wife initiated stepparent adoption proceedings in the Hillsdale County Probate Court.

MCL 710.51; MSA 27.3178(555.51) provides in relevant part:

(6) If the parents of a child are divorced . . . and if the parent having legal custody of the child subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially

comply with the order, for a period of 2 years or more before the filing of the petition.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition.

The probate court found that both of the statutory factors were satisfied and accordingly terminated respondent's parental rights.

On appeal, respondent first argues that the probate court clearly erred in finding that respondent had the ability to support or assist in supporting the children but failed or neglected to provide regular and substantial support. We disagree. Respondent had a continuing obligation under the divorce judgment to inform the friend of the court of her employment; this she failed to do for more than two years. In addition, once a support order was entered with respondent's consent in August 1994, she was obligated to keep the friend of the court informed of subsequent changes in her employment. Again, she failed to inform the friend of the court when she obtained new employment after the support order was entered.

Although respondent's receipt of a legal settlement, rental income, and money from her parents may not constitute "income," see MCL 552.602(c); MSA 25.164 (2)(c), those receipts, combined with the wages she earned at various jobs, nevertheless show an ability to contribute to her children's support. The adoption statute focuses on "ability to pay," and not merely on income as narrowly defined in the income-withholding statutes. See MCL 710.51(6)(a); MSA 27.3178(555.51)(6)(a). Moreover, a review of the trial transcript establishes that, despite the ability to pay

some support, respondent had no intention of providing any support money to petitioners while she was not allowed to see the children:

> *[Petitioners' Counsel]*: Then why didn't you report [$19,000 received after settling a personal injury case in 1994] . . . to the Friend of the Court to determine that you had sufficient wherewithal to contribute to your children's support?
>
> *[Respondent]*: Do you really want to know why I didn't?
>
> *[Petitioners' Counsel]*: Yes. I'd like to know why.
>
> *[Respondent]*: Okay. Well, because I haven't seen my children in almost six years. My, uh, former husband and his wife falsely accused me of molesting my two children. Um, charges were brought against me. Had a trial day on an election day for the new prosecutor. I haven't seen my kids in almost six years, [counsel]. Uh, ethically speaking, what would make you think that I should pay these two people for keeping my children, whom they've lied, made my kids lie, what makes you think, ethically speaking, morally speaking, that I should pay two people money to keep my two kids and keep them from me as their mother?
>
> *[Petitioners' Counsel]*: Well all we're trying to establish is you made no efforts—
>
> *[Respondent]*: That's absolutely correct because they've made no effort to say what is true, what is right, what is just, they wanted to lie, lie, lie, lie, that's all they've done. . . . Because they haven't played fair either.

On this record, it is apparent that respondent's failure to provide funds for her children was not the product of an inability to assist in their support, but instead was motivated by her desire to retaliate against her ex-husband and his new wife. Under these circumstances, we cannot say that the probate court clearly erred in finding that respondent failed to substantially comply with the court's orders and that she had an

ability to provide regular and substantial support for the children, but failed to do so.

We conclude, however, that the probate court clearly erred in determining that respondent had the ability to visit, contact, or communicate with the children for the two-year period before the petitions were filed. The record establishes that in April 1991, less than two years after petitioner and respondent were divorced, petitioner went to the police with allegations that respondent had sexually abused the children. On August 9, 1991, the Jackson circuit judge entered an order in the divorce case that provided:

> IT IS HEREBY ORDERED that [respondent's] visitation rights with the minor children of the parties are terminated until such time as the Court receives a favorable report from a therapist/counselor that [respondent's] visitation rights should be reinstated.
>
> IT IS FURTHER ORDERED that [respondent] shall enroll in counseling and, if the counselor deems it appropriate that the children and [petitioner] take part in said counseling, they shall do so.

That order is *the only order in this record* that places conditions on the resumption of respondent's visitation rights. Respondent was acquitted of charges of sexual abuse in August 1992. While a September 30, 1994, ex parte letter from the circuit judge to respondent's then-attorney stated that "I would like you to have [respondent] evaluated by a psychologist to give me an opinion as to whether or not that person feels that [respondent] should resume her visitations," there is no evidence that an order was ever entered mirroring the judge's request. Further, while there was apparently a great deal of legal wrangling over the terms of a proposed order for counseling that was

eventually entered sometime before July 6, 1995, the only evidence of the contents of that order contained in the probate court files is a letter from the Jackson County friend of the court to Catholic Social Services stating that "[e]nclosed you will find an Order for Visitation Counseling . . . ," but without a copy of the order attached.

In short, the state of this record is such that there is simply no meaningful evidentiary support for the probate court's conclusion that respondent was able to contact the children if she would simply submit to a psychological evaluation. The only standing order concerning the resumption of respondent's visitation rights contained in the probate court record is the Jackson Circuit Court order of August 9, 1991. Whether Catholic Social Services ever provided the Jackson Circuit Court with the requisite "favorable report from a therapist/counselor that [respondent's] visitation rights should be reinstated" cannot be definitively ascertained. However, Catholic Social Services did contact the Hillsdale County Probate Court on August 30, 1995, and reported that respondent "has been very cooperative in attending and participating in visitation counseling."

While petitioners are correct that respondent's attempts to communicate with her children via birthday cards and telephone calls—rebuffed by petitioners—are not "regular or substantial" contacts within the meaning of the statute, see *In re Simon*, 171 Mich App 443, 449; 431 NW2d 71 (1988); *In re Martyn*, 161 Mich App 474, 482; 411 NW2d 743 (1987); *In re Colon*, 144 Mich App 805, 814; 377 NW2d 321 (1985), the record in this case establishes that respondent was prevented by the Jackson Circuit Court from having

any additional contact with the children. Respondent appears to have made a good-faith effort to attend court-ordered visitation counseling with Catholic Social Services in order to reestablish her right to contact the children, consistent with the court's orders. Contrary to the findings of the probate court, it was not shown that respondent had the means to restore visitation but failed to do so for a period of two years or more. Because the record does not establish that respondent, having the ability to maintain contact with the children, failed to do so, we reverse the order of the probate court terminating respondent's parental rights.

Our decision to reverse has been made after a page-by-page review of the probate court files, including correspondence suggesting that documents were forged or removed from the circuit court file, as well as letters containing threats to a judge and a prosecutor. The record is extremely disturbing to this Court and presents a most unflattering and distasteful picture of both petitioners and respondent. All parties seem more intent on obstructing and hurting each other at any cost, and on using the children as pawns in the process, than on nurturing them. For the sake of the children, whose relationship with their biological mother has been left in a legal limbo for most of their lives, we strongly urge all involved to start cooperating, to put their personal feelings aside, and to remember that the goal is the health, happiness, and well-being of the children.

Reversed.