*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* NMO and PSO, Minors.

UNPUBLISHED
May 28, 2026
10:50 AM

Nos. 373347; 373350
Wayne Circuit Court
Family Division
LC Nos. 2024-000121-AY;
        2024-000122-AY

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

NMO and PSO are minor children. Their mother and stepfather, petitioners, initiated stepparent-adoption and parental-termination proceedings, which resulted in the termination of respondent-father's parental rights to NMO and PSO. Respondent-father appeals. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Petitioner-mother and respondent-father were married and had two children, NMO and PSO. After seven years of marriage, they divorced. The 2017 judgment of divorce provided for joint legal custody of the children, sole physical custody to petitioner-mother, "reasonable parenting time [for respondent-father] as agreed on by the parties," and respondent-father making monthly child support payments.

Respondent-father last visited, contacted, or communicated with the children in October 2019. Petitioner-mother, the next month, obtained a personal protection order (PPO) against him, which he violated on multiple occasions (and for which he was fined and held in jail). He also made inconsistent child-support payments between 2019-2021 and ultimately stopped paying altogether in late 2021.

In December 2021, respondent-father moved to set a parenting-time schedule. At the recommendation of a Friend of the Court (FOC), the trial court suspended respondent-father's parenting time, and ordered him to undergo a psychological evaluation, provide a copy of the

evaluation to the FOC, update his mailing address with the FOC, and contact the FOC to schedule a parenting-time review appointment. Respondent-father did not make any of those efforts to reinstate his parenting time.

Petitioner-mother and petitioner-stepfather subsequently married, and then initiated these separate stepparent-adoption and termination proceedings. The trial court received testimony from petitioner-mother and respondent-father (who was not represented by counsel) and ultimately found that termination was warranted under MCL 710.51(6) because respondent-father failed to pay court-ordered child support and regularly or substantially failed or neglected to visit, contact, or communicate with the children for a period of two years or more. Respondent-father obtained counsel and moved for a rehearing, arguing that the trial court did not allow him to present evidence on whether he had the ability to visit, contact, or communicate with the children. The trial court granted respondent-father's motion, and the rehearing took place over three separate dates. On October 23, 2024, the trial court rendered its decision, but the record of the proceedings was lost. Two days later, the trial court entered an order affirming its original decision to terminate respondent-father's parental rights. These consolidated appeals ensued.

## II. TERMINATION OF PARENTAL RIGHTS UNDER MCL 710.51(6)

Respondent-father argues that the trial court erred by affirming its previous orders terminating his parental rights because he lacked the ability to visit, contact, or communicate with the children under MCL 710.51(6)(b), and by failing to make a finding regarding his ability to communicate with the children. We disagree.

## A. STANDARD OF REVIEW

"The petitioners in a stepparent adoption proceeding have the burden of proving by clear and convincing evidence that termination of the noncustodial parent's rights is warranted." *In re NRC*, 346 Mich App 54, 58; 11 NW3d 296 (2023). "A trial court's factual findings during a proceeding to terminate parental rights under the Adoption Code are reviewed for clear error." *In re AGD*, 327 Mich App 332, 338; 933 NW2d 751 (2019). "A finding is clearly erroneous if, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

"MCL 710.51(6) governs the termination of a noncustodial parent's rights in a stepparent adoption proceeding." *NRC*, 346 Mich App at 59. Its purpose "is to foster stepparent adoptions in families where the natural parent had regularly and substantially failed to support or communicate and visit with the child and refuses to consent to the adoption." *Id*. at 59-60 (quotation marks and citation omitted). The statute provides:

> (6) If the parents of a child are divorced, . . . and if a parent having custody of the child according to a court order subsequently marries and that parent's spouse petitions to adopt the child, the court upon notice and hearing may issue an order terminating the rights of the other parent if both of the following occur:

(a) The other parent, having the ability to support, or assist in supporting, the child, has failed or neglected to provide regular and substantial support for the child or if a support order has been entered, has failed to substantially comply with the order, for a period of 2 years or more before the filing of the petition. A child support order stating that support is $0.00 or that support is reserved shall be treated in the same manner as if no support order has been entered.

(b) The other parent, having the ability to visit, contact, or communicate with the child, has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition. [MCL 710.51(6)(a) and (b).]

This two-year lookback requirement means "the two-year period immediately preceding the filing of the termination petition." *NRC*, 346 Mich App at 60 (quotation marks and citation omitted).

## 1. TERMINATION

Petitioners filed the adoption and termination petitions on April 18, 2024, making the relevant two-year period April 18, 2022 to April 18, 2024. Below, respondent-father stipulated that he did not make any child-support payments during the two-year period, and on appeal, he does not fault the trial court's finding MCL 710.51(6)(a) applicable to him. Accordingly, the sole issue is whether the trial court correctly concluded that petitioners established by clear and convincing evidence that respondent-father had the "ability to visit, contact, or communicate" with the children and "regularly and substantially failed or neglected to do so" during the two-year period as required by MCL 710.51(6)(b). We agree with the trial court that petitioners satisfied their evidentiary burden.

Respondent-father's last contact with the children was on October 31, 2019. During the two-year lookback period, he did not visit, contact, or speak with them. He did not send any letters, cards, or birthday gifts, or reach out to either petitioner-mother's attorney to request a phone call or correspondence with the children or the FOC to obtain information on how to contact the children. When asked about his efforts, respondent-father testified that he hired counsel for assistance in pursuing his visitation rights, and attempted to settle the matter with petitioner-mother outside of court. That was not fruitful because (to his eyes) petitioner-mother sought to impose unreasonable terms on him. Accordingly, respondent-father did not follow through on his intent to establish contact with the children. He also testified that he hired counsel in early 2022 to pursue visitation but could not remember whether those efforts occurred within the two-year period. Otherwise, respondent-father did not make any other efforts to maintain contact or communication with the children.

We discern no clear error in the trial court's finding that respondent-father regularly and substantially failed to visit, contact, or communicate with the children during the two-year period. Indeed, respondent-father does not resist this conclusion on that ground; rather, he contends that the suspension of his parenting time and petitioner-mother's PPO prevented him from interacting with his children.

Concerning parenting time, respondent-father moved in the divorce case to set a parenting-time schedule in December 2021. The Washtenaw Circuit Court suspended respondent-father's parenting time on January 7, 2022, pending an evaluation and recommendation by the FOC. After receiving the FOC recommendation, on May 27, 2022, the court ordered that respondent-father would receive "[n]o parenting time," and required him to undergo a psychological evaluation, update his mailing address with the FOC, and contact the FOC to schedule a parenting-time review appointment. According to respondent-father's testimony, it is unclear whether he even knew his parenting time was suspended in 2022. When asked whether he was "aware . . . that the [FOC] recommended, and the Court ordered, that [his] parenting time be suspended," respondent-father stated that he "did not receive that paperwork," and had only skimmed the relevant documents before the October 8, 2024 rehearing. Having not received the order, he did not submit to the court-ordered psychological evaluation or make any other efforts to comply with the order. Respondent-father admitted, however, that he failed to update his mailing address with the FOC and would have received the order had he done so.

As to the PPO, petitioner-mother originally obtained the PPO against him in 2019; it was extended in September 2022 and expired on September 23, 2023. The PPO prohibited him from contacting her except as it related to parenting time, which was to "be governed by the divorce case in Washtenaw County." Below, respondent-father acknowledged that the PPO did not prohibit him from directly contacting or having third-party contact with his children but asserted that he felt unable to do so given that he was prohibited from contacting petitioner-mother. He testified that he was afraid of reaching out to petitioner-mother for the purpose of communicating with the children because he had previously been jailed for violating the PPO and believed it would happen again. But he ultimately conceded that he had the ability to establish some contact with his children, if necessary, based on his communications through counsel.

The record establishes, at the very least, that respondent-father had the ability to contact and communicate with the children but regularly and substantially failed to do so. Respondent-father acknowledged that he had the ability to communicate with the children by coordinating with counsel. Despite the fact that he could not afford counsel during the two-year period, petitioner-mother maintained the same counsel until the adoption and termination proceedings, and respondent-father did not reach out to petitioner-mother's attorney to request any contact or communication with the children. Respondent-father did not even know whether the children had separate phone numbers or e-mail addresses that he could use to reach them. And while the PPO originally prevented him from personally attending the children's school until September 2022, he was always free to attend virtual parent-teacher conferences. Additionally, in September 2023, the PPO expired altogether, and respondent-father failed to contact or communicate with the children thereafter.

We are not persuaded by respondent-father's contention that *In re Kaiser*, 222 Mich App 619; 564 NW2d 174 (1997), commands a different result because he was prevented from visiting or contacting the children.[1] Unlike there, the record discloses here no good-faith attempt by

---

[1] Respondent-father also relies on *In re VRK*, unpublished per curiam opinion of the Court of Appeals, issued May 2, 2024 (Docket No. 367877), for the proposition that his own wrongful

respondent-father to visit or contact the children. Rather, he failed to inform the FOC about any change in his address, did not attempt to keep himself informed regarding the parenting-time proceedings that he initiated in December 2021, admitted that he stopped following through on his intent to contact the children, did not make any additional efforts to maintain contact or communication with them after early 2022, and apparently was not even aware that his parenting time was suspended in 2022.

Based on this evidence, we cannot disturb the trial court's factual finding that respondent-father had the ability to contact or communicate with the children, but regularly and substantially failed to do so during the two-year period. Accordingly, the trial court did not err by affirming its original termination orders. See *In re Hill*, 221 Mich App 683, 694; 562 NW2d 254 (1997) (noting that a petitioner only has to prove "that respondent had the ability to perform any one of the acts [under MCL 710.51(6)(b)] and substantially failed or neglected to do so for two or more years preceding the filing of the petition").

## 2. FACT FINDING

Respondent-father lastly argues that the trial court failed to make a finding that he had the specific ability to communicate with the children. While the trial court announced that it would make its ruling during the October 23, 2024 hearing, the record of the proceedings was lost. In the parties' stipulated order to settle the record, they provide only that "[t]he trial court agreed with [petitioner-mother's] argument that the facts of the current case distinguished it from *Kaiser* and ruled in the Petitioners' favor." The lost recording and cursory description in the stipulation means we lack the full context of the trial court's findings and reasoning. But that does not mean there is an error requiring reversal. In its October 25, 2024 order, the trial court affirmed its original decision terminating respondent-father's parental rights, and those orders included a finding that "[t]he other parent having the ability to visit, contact, or communicate with the child[ren], has regularly and substantially failed or neglected to do so for a period of 2 years or more before the filing of the petition." Therefore, the record does contain a written finding that respondent-father had the ability to communicate with his children.

Furthermore, any error arising out of the lack of specific findings on the issue is harmless because the record clearly and convincingly establishes that respondent-father had the ability to communicate with the children. See *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009). Respondent-father admitted as much, agreeing that he had an ability to establish some contact with the children, but did not reach out to petitioner-mother's attorney to request any phone calls or communication with them. He also admitted that the PPO did not prohibit him from directly contacting the children. On September 8, 2022, the PPO permitted respondent-father to

---

actions or inactions do not bear on whether he had the ability to communicate with the children. But the wrongful-conduct rule, see, e.g., *Orzel v Scott Drug Co*, 449 Mich 550, 558; 537 NW2d 208 (1995), as discussed in *VRK* is inapplicable here because that rule requires "a legal action by respondent for damages based on his criminal wrongful acts." Unpub op at 4 n 1. Here, there is no claim that respondent-father's criminal acts interfered with his "ability to visit, contact, or communicate with" his children.

attend the children's school, and in September 2023, the PPO expired. Any purported impediment on respondent-father's ability to contact the children ended seven months before the expiration of the two-year period.

Because the record establishes that respondent-father had the ability to communicate with the children, the lack of specific findings on the matter does not warrant reversal. See MCR 2.613(A) ("[A]n error or defect in anything done or omitted by the court or by the parties is not ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").

### III. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense